PEMBERTON v. LONGMIRE.

No. 30588. March 21, 1944.

Rehearing Denied Sept. 12, 1944.

*151 P. 2d 410.*

Harry W. Priest, Rex Belisle, Norman E. Reynolds, and W. Otis Ridings, all of Oklahoma City, for plaintiff in error.

Dudley, Duvall & Dudley, of Oklahoma City, for defendant in error.

RILEY, J. This is an action commenced by M. D. Pemberton, trustee in bankruptcy of the Philmor Corporation, against defendant in error, W. M. Longmire, to recover, for the benefit of the creditors of said corporation, $8,540.25 alleged to have been collected by defendant from the Philmor Corporation and wrongfully applied on a debt owed by Phil Freedman to defendant for the purchase price of 89 shares of the capital stock of said corporation which had been sold by defendant to Phil Freedman.

The Philmor Corporation was organized about September, 1937, under the laws of the State of Oklahoma with authorized capital stock of $10,000 divided into 100 shares of the par value of $100 each. M. H. Caplin, Phil Freedman, and Max G. Cohen were the incorporators. Ninety shares of stock were issued; 87 shares to Caplin, two shares to Cohen, and one share to Freedman, thus giving the corporation $9,000 in cash.

Shortly after its organization, the Philmor Corporation entered into an agreement with Harbour-Longmire Company, a corporation of Oklahoma City, under which the Philmor Corporation was to, and did, occupy certain space in the store building of the Harbour-Longmire Company in Oklahoma City and engage in the retail sale of certain household appliances. As rental, the Philmor Corporation was to pay Harbour-Longmire Company a certain percentage of the gross sales of the Philmor Corporation, but not less than $500 per month. Under said arrangement, all sales by the Philmor Corporation were made in the name of the Harbour-Longmire Company and all the proceeds of such sales were paid into the hands of the cashier of the Harbour-Longmire Company. On the 10th day of each month the Harbour-Longmire Company would account to the Philmor Corporation for all funds received by it during the preceding month and pay the same to the Philmor Corporation, after deducting the rent for the preceding month, and such money as may have been advanced during the month for operating expenses. Freedman was the manager of the business and drew a salary of $300 per month; Caplin was president, and drew a salary of $150 per month.

The business was conducted under this arrangement until about May 27, 1938, at which time defendant, W. M. Longmire, purchased the 89 shares of stock in the Philmor Corporation theretofore owned by Caplin and Cohen, paying therefor the sum of $8,500. At the same time, defendant Longmire gave Phil Freedman a 90-day option to purchase said 89 shares of stock for the same price which defendant had paid for it. This agreement was in writing, wherein defendant was designated as first party and Freedman was designated as second party, and among other things, provided:

"(1) Said first party hereby gives and grants to said second party an option to purchase his said stock, for a period of ninety (90) days from this date, for the sum of $8,500.00 cash. If said second party does not exercise this option, then first party hereby gives and grants him nine (9) months additional time in which to buy forty-nine per cent or all of said stock for the then book value thereof.

"(2) Said second party is to manage the business of said Company and act in the capacity of General Manager thereof for a period of one year from June 1, 1938, and receive a salary of $300.00 per month. First party is to receive a salary of $150.00 per month for a period of one year from June 1, 1938, unless said second party exercises the option herein provided."

The business continued under said arrangement until shortly before August 10, 1938, at which time Freedman decided to exercise the option granted him, and informed defendant that Milton Kamber would furnish him the money, but when the parties were ready to consummate the sale Kamber was unable to furnish the $8,500. Thereupon a new or supplemental agreement was entered into between defendant and Freedman which, after reciting the former option agreement, which by reference was made a part of the supplemental agreement, provided as follows:

"Whereas, it is the mutual desire of the parties to said contract, that Phil Freedman, party of the second part, does exercise the option granted him on May 27, 1938, copy of which is attached hereto, and agrees to purchase all of the stock held by William M. Longmire, party of the first part, for a stipulated sum of $8,500.00, to be paid as follows:

"$3,000.00 cash, and a promissory note for $5,500.00, bearing 6% interest, payable and due $2,750.00 due September 10, 1938, and $2,750.00 due October 10, 1938; and that as security on the said promissory note, Phil Freedman and the Philmor Corporation does hereby assign to William M. Longmire all of his accounts receivable until the full amount of the note has been duly paid."

At that time, defendant was paid the

$3,000. He received a promissory note for $5,500, bearing 6% interest, payable $2,750 September 10, 1938, and $2,750 October 10, 1938. The note was signed by the Philmor Corporation by Phil Freedman, and by Phil Freedman personally. Said note, together with $40.25 interest, was paid on September 10th and October 10th, 1938. The business was continued by Freedman until about the end of January, 1939, at which time the stock of merchandise was removed from the Harbour-Longmire building. On April 9, 1939, the Philmor Corporation filed a voluntary petition in bankruptcy, with a scheduled indebtedness of $4,791.98. On October 26, 1939, this action was commenced against defendant W. M. Longmire to recover $8,590.25 received by defendant for stock sold by him to Phil Freedman. The manner in which defendant was paid for the stock is what gave rise to this lawsuit.

With reference to the $3,000 payment made on August 10, 1938, plaintiff's petition alleged:

"That on or about the 10th day of August, 1938, the defendant, W. M. Longmire, and the said Phil Freedman, who were the sole and only stockholders, the officers and the directors of said Philmore Corporation, caused to be withdrawn from the funds of said corporation, then on deposit in the Liberty National Bank of Oklahoma City, Oklahoma, the sum of three thousand dollars ($3,000.00), and caused said sum to be paid to defendant on the indebtedness due from Phil Freedman to him individually as a part of the purchase price of said corporation stock.

"That at the time of the withdrawal of the said three thousand dollars ($3,000.00) and the payment thereof to the said W. M. Longmire, he knew that the said sum was the money and property of the Philmor Corporation; that the said sum was not paid from the surplus, earnings or undivided profits of said corporation, but was paid from the capital of said corporation; all of which was known to the defendant, W. M. Longmire, or could have, with due diligence, been ascertained by him.

"That at the time of the payment of

said sum of three thousand dollars ($3,000.00) to the said W. M. Longmire, the Philmor Corporation was, by the payment of said sum, and the execution of the note for five thousand five hundred dollars ($5,500.00) hereinafter referred to, rendered insolvent, all of which was known to the defendant, W. M. Longmire, or could have been, by due diligence, ascertained by him."

With reference to the manner in which the first $2,750 on the note was paid, the petition, after alleging the execution and delivery of the note as above shown, alleged:

"That thereafter and on or about September 10, 1938, said Harbour-Longmire Company had in its possession funds belonging to Philmor Corporation in the amount of two thousand seven hundred sixty-three dollars and seventy-five cents ($2,763.75) which, in compliance with the terms and conditions of Exhibit 'B,' the defendant, W. M. Longmire, acting in his capacity as president of said Harbour-Longmire Company, and for himself individually, caused the said Harbour-Longmire Company to pay the said sum then being held by Harbour-Longmire Company and belonging to Philmor Corporation, of two thousand seven hundred sixty-three dollars and seventy-five cents ($2,763.75) to the defendant, W. M. Longmire, which he then and there credited on the purchase price of said stock sold to Phil Freedman; that said sum was the property of the Philmor Corporation, and was not surplus, earnings, or undivided profits, but capital assets of said corporation; that at the time of said payment of said sum said corporation was insolvent, which fact was well known to the defendant, or could have been ascertained by him with due diligence; that he well knew the said sum so paid to him was the property of said corporation; that at the time of the payment of said sum the defendant, W. M. Longmire, well knew that the said Philmor Corporation intended to continue the operation of its business and intended to make purchases in the usual course of business on credit, and intended that said corporation should make further purchases on credit in order that he might collect the balance of said note in the total amount of five thousand five hundred dollars

($5,500.00). That at the time of the payment of said sum, the Philmor Corporation was indebted to various creditors in the sum of eleven thousand four hundred and fifty dollars ($11,-450.00) or more, all of which was well known to the defendant, or could have been ascertained by him with due diligence; and that said creditors, or a major portion of them, were creditors of the Philmor Corporation in various sums at the time of its adjudication in bankruptcy."

Substantially the same allegations were made as to the payment of the balance of the note, paid on October 10, 1938.

The answer of defendant was a general denial.

The cause was tried to the court without a jury, resulting in findings of fact and judgment in favor of defendant.

Plaintiff appeals, and in the petition in error sets forth four assignments of error; but in the brief plaintiff relies upon two propositions under the fourth assignment of error. They are: (1) The court erred in rendering judgment for defendant and failing to render judgment in favor of plaintiff; (2) the decision is contrary to the evidence and contrary to law.

Plaintiff first cites a number of cases going to the right of the trustee in bankruptcy to maintain this action. Such right is not questioned, and we deem it unnecessary to consider or discuss the authorities cited on the question, except to say that the right of a trustee to maintain an action of this nature is supported by the general rule stated in 8 C. J. S., page 1092, as follows:

"The right of suit for the liability of a breach of duty in the fiduciary relationship of the officers and directors of a corporation, which inheres in the corporation, may be maintained by its trustee in bankruptcy, even though solely for the benefit of creditors; . . ."

And at page 1093, where the further rule is stated:

"A corporation's trustee in bank-

ruptcy may recover from the payee the proceeds of a corporation check issued by an officer to pay his personal debt, from a money lender who participated for his own gain and profit in the wrongful appropriation of the corporation's funds by directors and officers, and from the vendor of stock of a corporation which that corporation, subsequently bankrupt, illegally purchased. . . ."

The propositions presented by plaintiff raise the question of the sufficiency of the evidence to sustain the findings and judgment of the trial court. Defendant asserts that the question is not properly before the court under the record for the reason that the sufficiency of the evidence was not challenged by the plaintiff by demurrer or otherwise in the court below. In this connection, defendant cites Squires v. Wesco Supply Co., 93 Okla. 138, 219 P. 895; Beam v. Farmers & Merchants Bank, 104 Okla. 158, 230 P. 881; and other similar cases. In those cases the question was not raised during the course of the trial nor in the motion for new trial.

In Markle v. Stekoll, 138 Okla. 171, 280 P. 842, it is held:

"In a trial of a cause by the court, the question of the sufficiency of the evidence to support the judgment may be reviewed by this court upon the overruling of the motion for a new trial alleging the insufficiency of the evidence, although there has been no demurrer to the evidence or request for judgment by the losing party."

Lambert v. Harrison, 69 Okla. 172, 171 P. 45, and Laclede Oil & Gas Co. v. Miller, 69 Okla. 242, 172 P. 84, apply the same rule.

It appears that in law cases tried to the court without a jury, it is sufficient if the question of the sufficiency of the evidence is first raised in a motion for new trial. But if the question is not raised by demurrer or otherwise during the trial, or by motion for new trial, the question of the sufficiency of the evidence may not be raised on appeal. In this case the question was raised and presented to the trial court in the motion for new trial. Under the rule stated in Markle v. Stekoll, supra, the question may be reviewed by this court.

We first consider the findings of the trial court with reference to the payment of the $3,000 to defendant on August 10, 1938.

The evidence shows that when Phil Freedman decided to exercise the option given him in the contract of May 27, 1938, he represented to defendant that Milton Kamber, his brother-in-law, would furnish him the money. But when the parties were ready to consummate the deal, Kamber appeared and stated that he was unable to furnish the entire $8,500 because he had recently opened a store in Dallas, Texas, and was short of money, but could and would furnish $3,000. Thereupon, the supplemental agreement for the sale of the stock above mentioned was entered into. In payment of the $3,000 Kamber gave defendant Longmire his check for $3,000.

The evidence further shows that T. J. Horwitz of Oklahoma City had agreed to furnish Kamber the $3,000. After Kamber delivered his check to defendant, Horwitz gave Kamber his check for $3,000. Thereupon, Phil Freedman gave Horwitz a check for $3,000 drawn against the funds of the Philmor Corporation. All the checks were paid in due course.

On the question of whether the defendant knew of or participated in the withdrawal of the Philmor Corporation's money to reimburse Horwitz, the evidence is in conflict. Freedman testified that defendant himself, or through his manager, J. D. Caraway, suggested such arrangement. Defendant and Caraway both denied that they had any knowledge whatever that Freedman had withdrawn the money from the account of the Philmor Corporation to reimburse Horwitz or that Horwitz had in turn repaid Kamber. With reference to that part of the transaction, the trial court found:

"The court specifically finds that W. M. Longmire or J. D. Caraway, em-

ployee of Harbour-Longmire Company, had no knowledge of the devious check transactions, and they did not know that Phil Freedman was using corporate funds of the Philmor Corporation for the purchase of the stock."

There is ample evidence to support the finding. It must then be taken as an established fact that the defendant knew nothing about the check from the Philmor Corporation to Horwitz or the check from Horwitz and Kamber. Under such state of facts, it cannot be said that defendant was in any way responsible for or participated in the withdrawal of the funds of the Philmor Corporation. The check by which defendant was paid did not and could not in any way affect the funds of the Philmor Corporation.

As to payment of the $5,500 balance of the purchase price of the stock, the trial court found:

"The court further finds that the balance of the purchase price of $5,500 was paid to W. M. Longmire by Phil Freedman by directing the Harbour-Longmire Company, a corporation, to pay Mr. Longmire $2,750 in each of two payments on September 10th and October 10, 1938, respectively, from the earnings of the Philmor Corporation and/or Phil Freedman in the hands of the Harbour-Longmire Company."

As to how that transaction affected the Philmor Corporation, with respect to its solvency, the court found:

"The court further finds that the Philmor Corporation was not insolvent at the time the $3,000 check was given to Mr. W. M. Longmire, nor was such corporation rendered insolvent thereby, and the court further finds that the Philmor Corporation was not insolvent on September 10th and October 10th, the time at which the two $2,750 payments were made, nor was it rendered insolvent by such payments."

As to defendant's knowledge of the source of the money with which the $5,500 note was paid, the court found:

"The court further finds that the defendant had no knowledge to the contrary and at all times believed that the stock was being purchased by Phil Freedman with funds advanced him from B. M. Kamber and from the earnings of the Philmor Corporation."

As we view the uncontradicted evidence, these findings as to the payment of the $5,500 note are without evidence to support the same.

The evidence shows that all the money derived from sales made by the Philmore Corporation was paid to and received by the Harbour-Longmire Company; that defendant was the president and general manager of the Harbour-Longmire Company; that after the money was received, it was paid out by checks signed by defendant Longmire as president, and countersigned by Augusta H. Baird, secretary.

On September 10, 1938, a statement was rendered by Harbour-Longmire Company showing the amount of net sales of the Philmor Corporation for the preceding month and the charges made against the same. That statement showed the payment on the note of $2,750 out of the funds of the Philmor Corporation.

On October 10th a similar statement was rendered showing payment to W. M. Longmire of $2,750 and interest in the sum of $40.25, both out of the funds belonging to the Philmor Corporation.

As we view it, the uncontradicted evidence shows that the $5,500 note and interest was paid to defendant out of funds belonging to the Philmor Corporation, and that none of it came from B. M. Kamber or from Phil Freedman. Defendant must have known this because the payments were made by and through the Harbour-Longmire Company, of which defendant was president and general manager. This amounted to a transfer of money belonging to the Philmor Corporation in satisfaction of the individual indebtedness of Phil Freedman to defendant for a part of the purchase price of the 89 shares of stock in the Philmor Corporation.

In Boyle v. Lewiston Trust Co., 126 Me. 74, 136 Atl. 292, it is held:

"Where the check of a corporation, signed by one of its officers, is used to pay his personal debt, the proceeds may be recovered by the corporation's trustee in bankruptcy from the party receiving the check unless he shows that the officer had authority to issue it."

In Garrow et al. v. Fraser et ux., 98 Wash. 88, 167 P. 75, it is held:

"Where one stockholder sells his share of stock to another stockholder under an agreement by which the stock is to be paid for out of the assets of the corporation, the seller is liable in an action for the benefit of the creditors of the corporation to the extent of the value of the assets which he has received."

In El Capitan Land & Cattle Co. v. Boston-Kansas City Cattle Loan Co., 65 Kan. 359, 69 P. 332, it is held:

"The officers or directors of a corporation have no power to pledge its notes to secure the payment of a personal debt of its president."

In Lake Mills Feed & Fuel Co. v. Peterson, 215 Wis. 379, 254 N. W. 536, it is held:

"Corporation officer or stockholder has no ostensible authority to divert corporation's assets in payment of his debts, nor may one dealing with him assume that he has such authority."

In First Nat. Bank of Rice Lake, Wis., v. Flour City Trunk Co., 118 Minn. 151, 136 N. W. 563, it is held:

"An officer of a corporation having general authority to execute promissory notes for it in the course of its business has no authority to execute the note of the corporation, without consideration or benefit moving to it, for the payment of his personal debt, or that of another If the payee in such a note has notice of the purpose for which it was executed, he cannot maintain an action thereon against the corporation. The fact that the officer executed the note of the corporation in payment of his own debt, or that of another officer of the corporation to the payee, is sufficient to charge him with notice."

Wheeler v. Home Savings & State Bank, 188 Ill. 34, 58 N. E. 598, holds:

"One who receives from an officer of a corporation the securities of such corporation as security for a personal debt of such officer does so at his peril."

In McCray v. Sapulpa Petroleum Co. et al., 102 Okla. 108, 226 P. 875, it is held:

"An officer of a corporation has no general authority to transfer property of a corporation in satisfaction of the officer's individual obligation, and any person entering into a contract with an officer of a corporation under such circumstances does so at his peril and must ascertain that special authority has been conferred."

The applicable rule is well stated in Garrow et al. v. Fraser et ux., supra, wherein it is said:

"Both reason and authority support the proposition that where one stockholder sells his shares of stock to another stockholder under an agreement by which the stock is to be paid for out of the assets of the corporation, the seller is liable in an action brought for the benefit of the creditors of the corporation to the extent of the value of the assets which he has received."

Under that rule, the Philmor Corporation had no right to pay Phil Freedman's debt. If by the transaction the Philmor Corporation was rendered insolvent and unable to pay its creditors, defendant should be held to respond for the benefit of the creditors in an amount sufficient to pay the creditors of the Philmor Corporation, which from the record appears to be $4,791.98, less cash on hand at the time the corporation was adjudicated a bankrupt, and less what may have been realized from the sale of other assets of the corporation.

That part of the finding of the trial court to the effect that the Philmor Corporation was not insolvent on September 10, 1938, nor on October 10, 1938, and was not rendered insolvent by the payment of the $5,500 note out of its funds, is equally without supporting evidence. The uncontradicted evidence shows that the net proceeds of the sales of the Philmor Corporation for the month of August, 1938, was $7,-

552.70. During that month $2,617.69 had been paid to or for the Philmor Corporation, leaving $4,935.01 in the hands of the Harbour-Longmire Company. On September 10, 1938, when settlement of the August business was had, the Philmor Corporation owed $9,278.43; $2,750.00 had been deducted from the $4,935.01 due the Philmor Corporation, and paid to defendant on the note. The balance, $2,165.01, was paid to the Philmor Corporation. So that on September 10, 1938, the Philmor Corporation had only $2,165.01 to pay on an indebtedness of $9,278.43. Said corporation then owed more than $7,000 which it was unable to pay.

The net sales of the Philmor Corporation for the month of September, 1938, amounted to $5,962.92. On October 10, 1938, when settlement of that month's business was had, $3,126.95 had been paid to or for the Philmor Corporation during the month of September, leaving $2,875.97 due the Philmor Corporation; but $2,750 balance of the principal of the $5,500 note, and $40.25 interest, was deducted therefrom and paid or credited to defendant, leaving only $85.72, which was paid to the Philmor Corporation on October 10, 1938. On that date the Philmor Corporation owed $11,264.15 and had only $85.72 to apply on such indebtedness. This conclusively shows that the corporation was insolvent on October 10, 1938, and that the payment to defendant of the sum of $5,590.25 out of money belonging to said corporation was the principal cause of such insolvency.

It has been held that a solvent corporation may dispose of its property in any way it wishes, with the consent of its directors and stockholders, and creditors have no right to complain if the corporation is not thereby rendered insolvent. Oliver v. Safe Deposit & Title Guaranty Co., 315 Pa. 552, 173 Atl. 281.

Cases are cited by defendant tending to uphold the right of a corporation to pledge or apply its assets to the payment of the debt of an individual, but they are cases where the corporations were solvent and the rights of creditors were not impaired by the transaction. They have no application where the corporation is insolvent or is rendered insolvent by such transactions and the rights of creditors are thereby impaired.

There are cases which hold that one who owns all the stock of a corporation may use the property of such corporation to pay his individual obligation. But he has no power to pledge or use the property of the corporation to secure or pay his individual debt to the prejudice of creditors of the corporation. 14 C. J. 865.

Plaintiff concedes in the reply brief that he is not entitled to recover more than the amount necessary to pay the creditors of the Philmor Corporation. In this we agree. The amount necessary for that purpose must be determined from the approved claims of creditors, less cash on hand at the date of the adjudication in bankruptcy and less the amount realized from the sale of the property of the bankrupt corporation.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

CORN, C.J., GIBSON, V.C.J., and OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur.