Hegel **BRANCH**, Ethel L. Chandler and Donald Chandler, Appellants,

v.

James S. **STEPH**, Trustee, Chickasaw Lumber Company of Duncan, Oklahoma, Inc., Appellee.

No. 9089.

United States Court of Appeals Tenth Circuit.

Feb. 16, 1968.

Gene M. Gardner, Duncan, Okl., for appellants.

Norman E. Reynolds, Oklahoma City, for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and DELEHANT*, District Judge.

MURRAH, Chief Judge.

This is an appeal from a judgment against the seller of capital stock of a bankrupt corporation for the amount received by him from corporate assets as payment for the purchase price of all of his corporate stock. The judgment is based upon the three-fold grounds that the transaction was not only unauthorized but fraudulently void for two different reasons. See Steph v. Branch, D.C., 255 F.Supp. 526. We affirm the judgment.

The following pertinent facts were found by the trial court and are necessary to an understanding of the issues and the climate in which they are cast. Hegel Branch, a Duncan, Oklahoma, attorney, either owned or controlled all of the stock of Chickasaw Lumber Company, a corporation with its principal place of business in Duncan. Branch sold all of the capital stock to Ethel Chandler under an agreement of sale drafted by Branch for a total purchase price of $28,000. By the terms of the agreement, Branch received $5,000 in cash from Ethel Chandler and a promissory note in the amount of $23,000 executed by Ethel, her son Don Chandler and the corporation. As security for the note, the corporation executed a chattel mortgage and security agreement in favor of Branch covering "certain buildings and equipment belonging to Chickasaw". The promissory note provided that Branch was to receive payments of $100 per month and in addition was to be furnished such construction materials as he might from time to time need—the cost of said materials plus 20% to be deducted from the balance due on the note.

On February 15, 1963, Don Chandler took possession and management of the

---

* District Judge for the Eighth Circuit sitting by designation.

corporation and it became insolvent as of May 1, 1963. Beginning in April, 1963, through August 9, 1963, Branch received merchandise from the corporation on an open account in the amount of $942.27. On August 12, 1963, this account was cancelled and applied as a credit on the promissory note. Thereafter, and during the period from August 10, 1963, to March 20, 1964, Branch received merchandise in a total amount of $18,652.67, all of which was credited to the balance due on the promissory note. On May 22, 1964, a petition in bankruptcy was filed, and thereafter the Trustee brought this action in behalf of the corporation's creditors to recover the value of the corporate assets transferred to Branch in payment of the promissory note.

■■ The trial judge held that the Trustee was entitled to recover the amounts of $942.27 and $18,652.67 or a total of $19,594.94 from Branch for three separate and sufficient reasons: (1) The arrangement between Branch and the Chandlers for the sale of the corporate stock of the bankrupt had the effect of the corporation's discharging the personal debt and obligation of the Chandlers under the note; that as the draftor of the instruments Branch had actual knowledge of the effect of this arrangement; that as corporate officers or stockholders neither of the Chandlers had ostensible authority to divert corporate assets in payment of personal debts, nor could anyone dealing with them, especially Branch, assume that they had such authority, and "where one stockholder sells his shares of stock to another * * * under an agreement by which the stock is to be paid for out of the assets of the corporation, the seller is liable in an action brought for the benefit of the creditors of the corporation to the extent of the value of the assets which he has received." Pemberton v. Longmire, 194 Okl. 311, 151 P.2d 410; (2) that all of the transfers were made without fair consideration within one year prior to the filing of the petition in bankruptcy and rendered the corporation insolvent; therefore, regardless of actual intent to defraud existing creditors, such transfers were fraudulent and void under § 67d(2) (a) of the Bankruptcy Act,[1] 11 U.S.C. § 107d(2) (a); and (3) that since the transfers were made without fair consideration within one year prior to the filing of the petition in bankruptcy, and since reasonable capital for the corporation would be $20,000 and the bankrupt never had over $5,000 in capital, all transfers to Branch of the merchandise of the Bankrupt must be considered as fraudulent and recoverable by the Trustee under § 67d(2) (b)[2] of the Bankruptcy Act, 11 U.S.C. § 107d(2) (b).

The trial judge was furthermore of the opinion that Branch was not a secured creditor of the bankrupt corporation and, therefore, declined to consider the collateral securing the promissory note.

In this appeal Branch contends that the record evidence is insufficient to support the court's finding as to the critical date of insolvency; that even so, the transaction for the sale of Branch's stock was fully legal and permissible; and that, moreover, the court erred in failing to consider Branch a secured creditor of the

---

1. Section 67d(2) (a) provides that "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent."

2. Section 67d(2) (b) provides that "Every transfer made and very obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent."

Bankrupt corporation to the extent of his collateral.

Suffice it to say that we have examined the record and find it amply supportive of the trial court's findings. Indeed, we think that any one of the trial court's reasons is conclusively sufficient to void the stock sale transaction as to the corporation and to support a judgment in favor of the Trustee for the value of the corporate assets transferred pursuant thereto.

■ We also agree with the trial court's ultimate conclusion that Branch was not a secured creditor of the corporation and was not, therefore, entitled to the corporate collateral securing the promissory note or the value of said collateral. While we do agree with the trial judge that the chattel mortgage and security agreement executed by the corporation were ineffective, we cannot adopt his reasoning to the effect that "These instruments did not cover the inventory. The Security Agreement was filed in the office of the County Clerk of Stephens County, Oklahoma, on February 19, 1963. It was not filed in Oklahoma County as provided by Title 12A, Oklahoma Statutes, Section 9–401, and thus the defendant Branch was not a secured creditor of the Bankrupt."

Title 12A, Okla.Stat. § 9–204 provides that a Security Interest attaches when there is (1) an agreement that it attach, (2) value is given, and (3) the debtor has rights in the collateral. Section 9–401, relied upon by the trial court, sets forth the proper places for filing a security interest in order to perfect it, and is concerned only with priority of liens—not with the status of a lienholder. In other words, perfection of a lien in accordance with § 9–401 acts only to give the secured creditor priority over all liens on the same collateral perfected subsequent thereto and not to create or destroy a security interest valid under § 9–204. In our case, as we have seen, the corporation was not the debtor and had no authority to encumber its assets by entering into a security agreement for the personal debt of its shareholders. The require-

ments of 9–204 were, therefore, never met, the security interest never attached to the corporate collateral, hence Branch was not a secured creditor of the bankrupt corporation.

The judgment is affirmed.