No. 48,147

KANSAS STATE BANK, *Appellee,* v. OVERSEAS MOTOSPORT, INC., *Appellant.*

(563 P.2d 414)

Opinion filed April 9, 1977.

*Richard H. Seaton,* of Everett, Seaton & Peck, of Manhattan, argued the cause, and *Charles S. Arthur, III,* of Arthur, Green, Arthur & Conderman, also of Manhattan, was on the brief for the appellant.

*John F. Stites,* of Stites, Hill & Wilson, of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an action for the recovery of damages based upon a claim of breach of contract, commenced by the Kansas State Bank against Overseas Motosport, Inc. The bank prevailed in the district court, and Overseas appeals.

Overseas admits that it breached the contract, and that the bank's loss is $1,500. The question before us is whether the breach caused the loss or, stated another way, whether the damages are such as may fairly and reasonably be considered as arising naturally, according to the usual course of things, from the breach of the contract itself.

We have long followed the rule of *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Reprint 145, 5 Eng. Rul. Cas. 502 (1854); and see 22 Am. Jur. 2d Damages, Sec. 56. Simply stated, the rule is that damages recoverable for breach of contract are limited to those damages which may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach. *Cain v. Grosshans & Petersen, Inc.*, 196 Kan. 497, 501, 413 P. 2d 98; *Hess v. Jarboe*, 201 Kan. 705, 708, 443 P. 2d 294; *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 738, 512 P. 2d 379; *Denman v. Aspen Drilling Co.*, 214 Kan. 402, 405, 520 P. 2d 1303; *Mahoney, Inc. v. Galokee Corporation*, 214 Kan. 754, 756, 522 P. 2d 428.

Conversely, damages which are not the proximate result of the breach of contract, and those which are remote, cannot serve to support a judgment. Recovery may not be had where it is not shown with reasonable certainty that the damages resulted from the act or omission complained of. *Apperson v. Security State Bank*, 215 Kan. 724, 735, 736, 528 P. 2d 1211.

The activity out of which this controversy arose commenced in May, 1974, when Steven C. Hunter applied for a loan from the Kansas State Bank. The bank made the usual credit checks, found that Hunter was serving in the U. S. Army, and approved the credit. On July 16, 1974, Hunter returned to the bank and signed a note and security agreement. The agreement described the collateral as a 1974 Suzuki GT-750, SN#52811. The bank accepted the note and security agreement, and issued its cashier's check in the amount of $1500, payable to Hunter and Overseas. Stamped on the back of the check, above the endorsement, was the following legend:

"The endorsers of this money order guarantee that the Kansas State Bank of Manhattan, Kansas, has a recorded first lien against 1974 Suzuki GT-750, #52811."

The bank called Overseas and was assured that Overseas would show the bank's lien when title was delivered to Hunter.

The motorcycle sold for $2023.43. Overseas accepted the bank's check for $1500, and carried the balance of $523.43 on an open charge. It delivered title to Hunter, but inadvertently showed itself as the lien holder. The bank's lien was not shown.

Overseas admits that this was a breach of its agreement with the bank.

Hunter's first payment to the bank was due on August 15, 1974. When this was not paid, the bank mailed notices to Hunter on August 20 and August 30; there was no response. About this time, the bank discovered that Hunter was AWOL, and that he had been AWOL since before July 16, when the loan was made. Thereafter, the bank tried to find him.

Between September 7 and 15, one of the bank officers located Hunter and the motorcycle in Manhattan. Hunter refused to surrender possession of the motorcycle, and stated that the bank couldn't do anything about it because he was sure the bank did not have a lien on the cycle. The bank checked with the motor vehicle department and found that it had no *recorded* lien. The bank then erroneously concluded that it could not foreclose because it had no perfected lien. About the middle of October, the bank discovered that Overseas was listed on the title as a lien holder. The bank continued its efforts to locate Hunter, but could find neither Hunter nor the motorcycle. On December 20 the bank commenced this action.

The bank argued to the trial court, and argues here, that the defendant's breach resulted in the bank having *no enforceable lien* on the motorcycle, and thus no legal avenues were open to it to secure possession of the motorcycle. The trial court found that this was not the paramount issue; that the omission of the bank's lien on the title caused the bank to delay foreclosure or take other action, and that the delay thus caused by the defendant was the proximate cause of the loss. The court did not decide whether the bank in fact had an enforceable lien.

K. S. A. 84-9-201 provides in applicable part that:

"Except as otherwise provided by this act a security agreement is effective according to its terms between the parties . . ."

K.S.A. 1974 Supp. 84-9-203 (since amended) provides that:

"(1) . . . [A] security interest is not enforceable against the debtor or third parties unless

.   .   .   .   .   .   .   .   .   .

"(b) the debtor has signed a security agreement which contains a description of the collateral . . ."

K. S. A. 84-9-204 (since amended) provides in part that:

"A security interest cannot attach until there is agreement . . . that it attach

and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching."

## K. S. A. 84-9-501 (also since amended) provides that:

"When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part . . . He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . ."

## K. S. A. 84-9-503 provides that:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . ."

## The Kansas Comment to 84-9-503 is instructive. It reads in part as follows:

"The secured party's right to possession of the collateral . . . accrues on default unless otherwise agreed in the security agreement. The secured party may take possession without the issuance of judicial process, but may not create a breach of the peace. . . .

". . . To obtain possession by judicial action, the [secured party] may bring a replevin action. . . ."

## K. S. A. 1974 Supp. 84-9-302 (since amended) provides in part that:

"(3) A security interest in

. . . . . . . .

"(c) a vehicle . . . subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle:

"Can be perfected only by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee . . . "

K. S. A. 8-135 regulates the transfer of ownership and the registration of motor vehicles. It provides in substance that an application for a certificate of title shall disclose all liens or encumbrances against the vehicle, and when the certificate of title is issued, it likewise shall list all liens or encumbrances shown upon the application.

The UCC does not require that a security interest be perfected by filing or otherwise in order to be valid. *Gulf Oil Company v. First National Bank of Hereford*, 503 S. W. 2d 300 (Tex. Civ. App.

1973); *Security Bank of Oregon v. Levens,* 257 Ore. 630, 480 P. 2d 706 (1971); *Branch v. Steph,* 389 F. 2d 233 (10th Cir. 1968).

". . . Sec. 9-204 provides that a Security Interest attaches when there is (1) an agreement that it attach, (2) value is given, and (3) the debtor has rights in the collateral. Section 9-401 . . . sets forth the proper places for filing a security interest in order to perfect it, and is concerned only with priority of liens—not with the status of a lienholder. In other words, perfection of a lien in accordance with sec. 9-401 acts only to give the secured creditor priority over all liens on the same collateral perfected subsequent thereto and not to create or destroy a security interest valid under sec. 9-204. . . ." *Branch v. Steph,* supra, p. 236.

Here, Hunter signed a security agreement. It contained a description of the collateral. Hunter agreed that the security interest attach to the vehicle. Value was given by the bank. The title to the vehicle, and physical possession of it, were given to Hunter by Overseas, and thus Hunter acquired rights in the collateral. It is clear that the security interest of the bank attached, pursuant to the provisions of sections 9-203 and 9-204, above set forth. Upon Hunter's default, the bank had the right to possession of the collateral pursuant to section 9-503.

We should emphasize that we are concerned here with the rights of only the *original parties* to a secured transaction— Hunter and the bank. So far as the record discloses, Hunter remained the owner of the vehicle. He did not sell it; he did not transfer the title; he did not mortgage, pledge, or otherwise encumber the vehicle to third parties; nor did he cause the cycle to become subject to the lien of a repairman.

The bank acquired its security interest—its lien on the vehicle—pursuant to the terms of its security agreement and the provisions of the Uniform Commercial Code. A security interest is created by a security agreement, and attaches as provided by sec. 9-204. *Priority* is established and protected by recording the lien on the title; but we are not here concerned with priorities or the rights of third parties. No third party is claiming an interest superior to that of the bank.

The bank confused "security interest" with "priority." It misunderstood the law, and took no action. Hunter absconded with the motorcycle after the bank contacted him in early September. Neither the bank's misconception of the law nor Hunter's flight can be laid at the door of Overseas.

There is no evidence that Hunter or the motorcycle remained in Manhattan for any period of time after the bank made contact

with Hunter in early September. Thus there is nothing in the evidence to support a finding that the bank could have foreclosed its lien anytime after that contact, or that delay by the bank caused its loss.

Upon the record before us we conclude that Hunter's flight, and his concealment of the motorcycle, caused the loss. As a matter of law, then, the loss was not caused by defendant's breach.

Accordingly, the judgment of the district court is reversed.