No. 66,029

BERNICE A. ENLOW, *Appellant,* v. SEARS, ROEBUCK AND CO., a Corporation, *Third-Party Plaintiff/Appellee,* v. VERNON T. WHITE, *et al., Third-Party Defendants.*

(822 P.2d 617)

Opinion filed December 6, 1991.

*Rodney C. Olsen,* of Morrison, Frost & Olsen, of Manhattan, argued the cause and was on the brief for appellant.

*Mark L. Bennett, Jr.,* of Bennett & Dillon, of Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: Bernice A. Enlow brings this action for breach of contract, breach of warranties, negligence, and violation of the Kansas Consumer Protection Act against Sears, Roebuck and Company (Sears), based upon an agreement between the parties that Sears would replace the roof of Enlow's house. Following a trial to a jury resulting in a verdict for Sears, Enlow appeals.

## FACTS

On July 21, 1987, Enlow entered into a contract with Sears for certain roof repairs to Enlow's house in Manhattan. The contract also provided that Sears was not responsible for delays in delivery or installation due to weather, fire, strikes, war, governmental regulations, or any causes beyond its control.

At the time the contract was executed, Sears had an independent qualified roof installer available to perform roofing repair and installation services for Sears. Subsequent to the execution of the contract, the roofer advised Sears he would not accept the Enlow roofing repair job because of the steepness of her roof. Sears then located another qualified roofing contractor, Vernon "Ted" White, to repair Enlow's roof.

White commenced working on Enlow's roof on or about October 18, 1987. He initially worked for two days, completing the roof on the porch of Enlow's house. White then left Enlow's job to complete another job. White returned to Enlow's residence on October 30, 1987. On that day, White and his crew removed a portion of the roof of Enlow's house. At nightfall they covered the opening in the roof with plywood, felt paper, and visquine. The crew left, intending to continue the next day. That night, a heavy rainstorm accompanied by strong winds occurred in Manhattan. The felt paper and visquine, were torn off the roof allowing water to enter the interior of Enlow's house. As a result, water damaged the paint and wallpaper on the ceilings and walls and damaged the kitchen floor.

The morning following the storm, Enlow called White and Sears' employees Ed Weston and Jerry Riggs about the damage to her house. White arrived at Enlow's house and, while attempting to repair the cover on the roof, slipped and fell off the roof, breaking his wrist. Within a few days White and Sears obtained another roofer, who then completed Enlow's roof repair. Weston assured Enlow that Sears would take care of the water damage to the interior of her house at Sears' expense. White also advised Enlow that he would see to it that the water damage to her house was taken care of at his expense. White and Weston then contacted an interior decorator, Jerry Haeffner, to prepare a proposal and get started on making repairs to Enlow's house. Haeffner's repair proposal was presented to Enlow, and Weston requested permission to instruct Haeffner to begin work. Enlow initially agreed to have Haeffner perform the work. Later, however, Enlow changed her mind and refused to permit the work to commence.

Because Enlow would not permit Sears to begin any repairs and believed her house was not habitable until repairs were made,

Sears agreed to pay for Enlow, her daughter, and her sister to live at the Holidome in Manhattan, until such time as an agreement could be reached and the house repairs completed. Enlow, her daughter, and her sister resided at the Holidome from October 31, 1987, until January 15, 1988, at Sears' expense. Throughout that two and one-half month period, Enlow refused to authorize Sears to cause repairs to her house to commence. Eventually, Enlow selected a contractor of her own choosing to do the work, he began work in early January 1988.

Enlow believed the insulation in the attic and walls was water damaged. Enlow, therefore, hired Donald Rose to inspect the insulation and prepare a proposal for the insulation repair work.

Enlow also contended the electrical system in her house had been permanently damaged and communicated her concern to Weston of Sears. Enlow believed the water damage required the house to be completely rewired and, therefore, obtained a bid for the rewiring from an electrician, Ed Gifford. In July 1989, Gifford walked through Enlow's house and visually observed the outlets, fixtures, and switches in order to prepare his bid. Gifford did not inspect the wiring itself.

Immediately following the rainstorm and prior to Gifford's inspection, Sears had the electrical system inspected by Charlie Johnson, who determined there was no permanent damage to the wiring as a result of the water getting into the house. After Gifford's bid preparation, Sears had the electrical system in the house inspected by two electrical experts: Elmer Warren, the president of McElroy Electric, and Jerry Vineyard, a licensed electrical engineer. Both of these experts thoroughly examined the wiring itself, connections, various circuits, and the breaker box and fuse panel. Warren and Vineyard concluded there was no damage to Enlow's electrical system as a result of its being exposed to water.

During the trial, at the conclusion of Enlow's evidence, Sears moved to dismiss Enlow's claims for: (1) damage to the insulation; (2) damage to the electrical system; (3) violation of the Kansas Consumer Protection Act (KCPA); (4) punitive damages; (5) negligence in the actual installation of the roof; (6) breach of implied and express warranty; and (7) breach of contract. Following oral arguments, the trial court found Enlow's claims for punitive dam-

ages should be dismissed. In addition, the trial court ruled Enlow's breach of contract claim should be dismissed as a matter of law.

At the conclusion of all the evidence, Sears renewed its motions to dismiss Enlow's claims for (1) damage to the insulation; (2) damage to the electrical system; (3) violation of the KCPA; (4) negligence in the actual installation of the roof; (5) breach of implied and express warranty; and (6) intentional tort. The trial court granted Sears' motion to dismiss the claim for damages to the electrical system. The trial court also granted a portion of Sears' motion to dismiss the claims for violations of the KCPA. Specifically, the trial court dismissed that portion of the KCPA claim that contended a violation occurred at the time Sears entered into the contract with Enlow because Sears did not have qualified personnel immediately available to perform the work. Additionally, the trial court dismissed that portion of Enlow's KCPA claim which alleged Sears had intentionally delayed or failed to repair or restore the damaged premises to their original condition. Finally, the trial court granted Sears' motion to dismiss Enlow's intentional tort claim.

After the trial court read instructions to the jury, the case was submitted to the jury on the remaining claims. During deliberations, the jury requested to see the testimony of Ted White. In response, the trial court had the jury return to open court and inquired as to what portion of testimony the jury wished to see. Once advised of the testimony desired, the court reporter read that portion to the jury. The jury then returned to the jury room to continue deliberations. Subsequently, the jury returned a verdict finding in Special Question 5 that Sears was not guilty of any negligence and, in another Special Question that apportioned the fault of each party, found Sears and Enlow each 50% at fault.

We will develop other facts as needed in discussing the issues.

In Enlow's appeal, she has raised 14 issues. The issues fall into three broad categories. Our discussion will be divided into those three categories.

I

The first issue for discussion is whether the trial court erred

in dismissing four of Enlow's causes of action and two of her damage claims.

The first group of issues involve the trial court's dismissal of Enlow's causes of action based upon negligence, breach of contract, the intentional tort of failing to restore Enlow's house to a habitable condition, a violation of a portion of the KCPA, and Enlow's claims for punitive damages and damages to her house's electrical wiring. They are the result of Sears' motions for directed verdict. Directed verdicts are governed by K.S.A. 1990 Supp. 60-250, which states:

"(a) *When made; effect.* A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for directed verdict shall state the specific grounds therefor. When a motion for directed verdict is sustained the judge shall cause the appropriate judgment to be entered.

"(b) *Reservation of decision on motion.* Decisions on motions for directed verdict by parties joined pursuant to subsection (c) of K.S.A. 60-258a and amendments thereto, shall be reserved by the court until all evidence has been presented by any party alleging the movant's fault."

The trial court, when ruling on a motion for a directed verdict pursuant to K.S.A. 1990 Supp. 60-250,

"is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury." *Baker v. City of Garden City,* 240 Kan. 554, 556, 731 P.2d 278 (1987).

When reviewing a directed verdict, we must apply the same rule as the trial court. If evidence is such that reasonable minds could reach different conclusions, the verdict should be reversed. *Baker,* 240 Kan. at 556.

Enlow asserts the trial court erred in dismissing her claim that White was negligent in protecting her roof and, thereby, denying her an opportunity to argue the doctrine of *res ipsa loquitur* to the jury. Enlow, however, did not raise the doctrine of *res ipsa loquitur* as a basis for her negligence claim until the oral argu-

ments on Sears' motion to dismiss her claim of negligence in the installation of the roof. The trial court found no evidence had been admitted to prove White had deviated from industry standards.

Enlow did not include the theory of *res ipsa loquitur* in the pretrial order, nor did she request a jury instruction on that theory. It is a well-known rule of law that "a point not raised before the trial court may not be raised for the first time on appeal." *Lostutter v. Estate of Larkin,* 235 Kan. 154, 166, 679 P.2d 181 (1984). Thus, Enlow's argument on this issue must fail.

Next, Enlow argues the trial court erred in dismissing her breach of contract claim. Enlow contends Sears breached its contract by: (1) failing to perform the repairs in a workmanlike or timely manner; (2) failing to adequately protect her property after exposing her house to impending rainfall; (3) failing to diligently commence work and, once work commenced, failing to diligently pursue the job to completion; and (4) commencing work in spite of a forecast for rain. The district court dismissed Enlow's contract claim stating the wind, rain, and water damage was not a foreseeable consequence of a breach of the completion date.

The court has long followed the rule of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 (1854), which states breach of contract damages "are limited to those damages which may fairly be considered as arising in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *Kansas State Bank v. Overseas Motosport, Inc.,* 222 Kan. 26, 27, 563 P.2d 414 (1977). In that case, Overseas admitted to breaching its contract with the bank. This court, however, found the bank's damages arose from its misunderstanding of the difference between "security interest" and "priority." We, therefore, held the bank could not collect damages from Overseas. 222 Kan. at 30.

Sears argues Enlow was not harmed by dismissal of her breach of contract claim because the same issue was submitted to the jury in her allegations of breach of express and implied warranties. Instructions No. 10 and No. 11 pertain to those claims. Instruction No. 10 states in pertinent part:

"The plaintiff claims that she sustained damages due to defendant's breach of its express or implied warranty in regard to the following: Improper installation of the roof, failure to correct faulty workmanship at no 'additional cost to plaintiff, failure to install the roof in a workmanlike manner and unfair dealings with the plaintiff."

The jury found Sears had in fact breached both its express and implied warranties but found Sears' breach of warrants did not cause Enlow any damages.

During the oral argument of Sears' motion to dismiss the breach of contract claim, Enlow's attorney stated he believed Sears breached the contract by not completing the project by August 10, 1987. However, he conceded the same evidence which pertained to the contract claim would also apply to the warranty claim. Considering his concession, the jury's verdict, and all other evidence presented, we find no prejudicial error.

Enlow also contends the trial court erred in dismissing her intentional tort claim for refusing to restore her house to a habitable condition. The trial court determined no such cause of action exists under Kansas law. We agree and, therefore, the trial court did not err.

Enlow next asserts the trial court erred in dismissing part of her claim under the KCPA. Enlow argued Sears had knowingly entered into the agreement to re-roof her house without having qualified personnel immediately available to perform the work, in violation of K.S.A. 50-626(a). In reaching the decision to dismiss that portion of the KCPA claim, the trial court found the evidence established that at the time the contract was entered into, there were qualified personnel available to perform the work. The trial court further held that whether such personnel were qualified or available did not fall within the purview of the KCPA.

The trial court, however, did submit Enlow's KCPA claims to the jury as to whether Sears acted in a deceptive manner regarding the "delay in performance or completion of the contract" and "failure to fulfill the contractual obligation to repair or restore plaintiff's property after suffering water damage." We find no error in the dismissal of part of Enlow's KCPA claim.

Let us now address Enlow's claims regarding dismissal of two of her damage claims. First, Enlow contends Sears' actions amounted to willful, wanton, or malicious conduct and, therefore,

entitled her to punitive damages. The trial court ruled as a matter of law that Enlow had not submitted any evidence to support her claims of willful, wanton, or malicious acts on the part of Sears. The plaintiff has the burden of presenting evidence that supports a claim for punitive damages. K.S.A. 1990 Supp. 60-3701(c).

However, it is not incumbent upon us to review the evidence to determine this issue. A verdict for actual damages is a prerequisite to the award of punitive damages. *Stevens v. Jayhawk Realty Co.*, 236 Kan. 90, 91, 689 P.2d 786 (1984); *Lantz v. City of Lawrence*, 232 Kan. 492, 499-500, 657 P.2d 539 (1983). Because the jury found Enlow to be 50% at fault, thereby precluding any damage recovery, the issue of punitive damages is moot.

Enlow also complains that the district court erred in dismissing her claim of damages to her house's electrical wiring system. The trial court stated that to determine whether the water from the rain caused the complained of damage to the wiring required knowledge of more than a lay person. Enlow's expert witness, Ed Gifford, a master electrician, admitted he did not inspect the electrical system to determine if it was damaged. Gifford only inspected the wiring to calculate a replacement cost. Furthermore, he testified that he was unable to determine whether the electrical system suffered any permanent damage on October 31, 1987.

The issue of damages should not be submitted to the jury if no evidence has been presented to support an award of damages. *Morris v. Francisco*, 238 Kan. 71, Syl. ¶ 2, 708 P.2d 498 (1985). In the case under consideration, Enlow did not present any evidence upon which the jury could base an award for damages to her electrical system. We find no error.

## II

We now turn to the issue of whether the trial court erred in its evidentiary rulings. It is a cardinal principle of law that rulings on admissibility of evidence fall within the sound discretion of the trial court. Thus, one attacking evidentiary rulings must show abuse of discretion.

An abuse of discretion exists " 'only when no reasonable man would take the view adopted by the trial court.' " *Reich v. Reich,*

235 Kan. 339, 343, 680 P.2d 545 (1984) (quoting *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 [1973]). Enlow has the burden of proving her abuse of discretion claims. See *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.,* 234 Kan. 121, 131, 671 P.2d 511 (1983). Additionally, a verdict will not be set aside nor a judgment reversed by reason of the erroneous exclusion of evidence unless it appears the complaining party proffered the excluded evidence. K.S.A. 60-405.

We will first address the three issues surrounding Ted White's testimony where Enlow claims the court abused its discretion. Enlow argues the district court erred by limiting her impeachment of White as an adverse or hostile witness. Prior to trial, White testified in his deposition that the opening in the roof had been covered by felt paper and visquine but denied any plywood had been used to cover the opening. Thus, his trial testimony regarding the use of plywood to cover the opening in the roof differed from his deposition testimony.

White was called by Enlow during her case in chief and was declared to be a hostile witness, thereby enabling Enlow's attorney to ask leading questions. Enlow claims the trial court ruled her attorney could not impeach White with his prior inconsistent testimony. For support she refers to the trial transcript where the trial court ruled White could not be impeached with prior testimony about his working relationship with Sears. The court made no ruling with regard to the inconsistent deposition testimony.

At no time during either the direct or redirect examination of White did Enlow's attorney: (1) confront or attempt to confront White with his prior inconsistent testimony; (2) seek to refresh White's recollection of the events by offering him an opportunity to review his deposition testimony; or (3) attempt to impeach White's trial testimony with regard to the manner in which the opening in the roof had been covered. Furthermore, Enlow failed to make a proffer of White's deposition testimony concerning the plywood.

Enlow cannot raise this issue for the first time on appeal. See *Schmeck v. City of Shawnee,* 232 Kan. 11, 35, 651 P.2d 585 (1982). Also, Enlow cannot claim the trial court erred in excluding

White's deposition testimony from the trial when she failed to offer it.

Next, Enlow contends the trial court erred by refusing to allow her to call Gerald Hendrick to rebut the testimony of White regarding whether plywood was used to cover the opening in the roof. The trial court denied Enlow's request to call Hendrick, stating it would not be proper rebuttal evidence.

"Rebuttal evidence can be introduced only after the parties have closed their case in chief and is limited to issues placed in conflict by the adverse party." 8 Branton & Lovett, Trial Lawyer's Series—Evidence, p. 1-137 (1991) (citing *Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170 [Tex. Civ. App. 1987]).

We have stated:

"Rebuttal testimony is, generally speaking, evidence presented in denial of some fact which the adverse party has attempted to prove. [Citation omitted.] It is clearly within the discretion of the trial court as to whether rebuttal evidence is allowed, and the ruling of the court will not be ground for reversal unless it appears the discretion has been abused to the prejudice of the [complaining party]." *State v. Norwood*, 217 Kan. 150, 154, 535 P.2d 996 (1975).

Orderly trial procedure requires some limitation upon the introduction of evidence. 29 Am. Jr. 2d, Evidence § 250, p. 298. Thus, there is a point where a trial court must stop the introduction of new evidence. Here, as Enlow's witness, White testified he had covered the roof with plywood. Although White had been declared a hostile witness, Enlow failed to treat him as such and did not cross-examine or attempt to impeach White with his prior inconsistent statement. Sears did not present any new evidence regarding the plywood in its case in chief. Therefore, under these facts, introducing rebuttal evidence by Enlow to impeach White is improper. We hold the trial court did not abuse its discretion.

Enlow also argues the trial court erred by denying her motion for new trial on the basis that White materially changed his testimony at trial. She contends White's testimony constituted surprise and, thus, was prejudicial to her case.

Enlow's attorney was aware of White's deposition testimony. The attorney referred to White's deposition when questioning

White on other facts. Enlow's attorney had ample opportunity to impeach White with his deposition on the issue of the use of plywood to cover the opening in the roof. The trial court, therefore, did not err in denying Enlow's motion for new trial.

Enlow's next issue involves the examination of Don Rose. Enlow hired Rose, owner of a contracting business, to examine her house's insulation in December 1989. Rose was assisted by his employee, Vaughn Telfer, in preparing a proposal for the repair of insulation that Enlow believed to be damaged by the rain getting into her house. When Enlow attempted to introduce Rose's proposal, plaintiff's exhibit 23, Sears objected on the grounds that parts of the proposal were based on Telfer's observations. Telfer had opened the attic and some of the house's walls, but Rose had not observed this for himself. The trial court sustained Sears' objection. Mr. Rose, however, was allowed to testify as to what he had observed and what his estimate of the total cost would be to repair the insulation in the house. The estimate included the replacement of the damaged insulation observed by Telfer.

Enlow argues on appeal that plaintiff's exhibit 23, Rose's proposal, should have been admitted despite the hearsay issue because it falls within the exception for business records. K.S.A. 1990 Supp. 60-460(m). Enlow did not assert this argument at trial.

We, however, need not rely on that oversight because the information contained in plaintiff's exhibit 23 was admitted through Rose's testimony. We find the exclusion of the exhibit not to be prejudicial.

Enlow additionally argues that even if plaintiff's exhibit 23 was properly excluded, the trial court abused its discretion by not allowing her to call Vaughn Telfer as a witness. We disagree. The evidence which Telfer could have testified to had been presented through Rose and was thus repetitious and Telfer, though known, was not listed as a witness by Enlow. Therefore, the trial court did not abuse its discretion.

### III

The next issue for our consideration is whether the trial court erred in instructing the jury and responding to jury questions,

and whether the jury's verdict is so inconsistent as to require a new trial.

First, Enlow argues the trial court erred in the instructions to the jury. In her brief to the court, Enlow merely refers us to the trial transcript and to the instructions actually used. Enlow does not specify the error or cite legal authority supporting her contention.

Supreme Court Rule 6.02(e) (1990 Kan. Ct. R. Annot. 25) requires that an appellant's brief include "[t]he arguments and authorities relied upon." We, therefore, shall not address this issue.

Enlow also contends the trial court erred in its response to jury questions during deliberations. Enlow specifically objects to the procedure used by the trial court when the jury submitted a written question through the bailiff requesting to see the testimony of Ted White. With the parties present, the trial court brought the jury back to the courtroom and asked the foreman what portion of White's testimony the jury was seeking. The trial court then had the court reporter read back the portion requested. Enlow did not object to this procedure.

The procedure for dealing with a jury's request for information after retiring is governed by K.S.A. 1990 Supp. 60-248(e). It states:

"If, after the jury has retired for deliberations, it desires further information as to any part of the law or evidence pertaining to the case, it may communicate its request through the bailiff to the court in the manner directed by the court, following which the court, after notice to counsel for the parties, may consider and make such provision for a response to the request of the jury as the court finds to be required under the circumstances."

Enlow argues the trial court's procedure gave undue emphasis to White's testimony. We find the trial court fully complied with K.S.A. 1990 Supp. 60-248(e) and, therefore, there is no error.

In Enlow's final argument she claims the jury's findings were contrary to the evidence, ambiguous, and inconsistent with the instructions and, thus, indicate the jury's misunderstanding of the law or facts, or both. Enlow bases this claim upon the fact that the jury answered "No" to the question of whether it found the defendant negligent, and yet, when asked the amount of fault

attributable to each party, the jury found Enlow and Sears each 50% at fault.

"So long as the verdict manifests the intentions and findings of the jury upon the issues submitted, it will not be overthrown merely because of defects in form." *Fudge v. City of Kansas City,* 239 Kan. 369, Syl. ¶ 4, 720 P.2d 1093 (1986). The jury was instructed on appellant's claims and the damages it could award. The jury found Sears was not negligent and chose not to award any damages based on any of Enlow's claims. Although the jury found both parties 50% at fault, it is apparent the verdict manifests the intentions and findings of the jury to render a verdict for Sears. Inconsistent jury findings, all of which give judgment to the same party, here the defendant, do not constitute reversible error.

The judgment is affirmed.