ROYAL COLLEGE SHOP, INC., a Kansas Corporation, and Thomas H. Black, Plaintiffs–Appellants, Cross–Appellees,

v.

NORTHERN INSURANCE CO. OF N.Y., Defendant–Appellees, Cross–Appellants.

Nos. 88–1584, 88–1620.

United States Court of Appeals, Tenth Circuit.

Feb. 1, 1990.

John W. Lungstrum (Scott J. Bloch with him on the briefs) of Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan., for plaintiffs-appellants, cross-appellees.

Glenn McCann (Theresa Shean Hall with him on the briefs) of Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, Mo., for defendant-appellees, cross-appellants.

Before LOGAN, EBEL and BARRETT, Circuit Judges.

BARRETT, Senior Circuit Judge.

Plaintiffs, Royal College Shop, Inc., (Royal College) and Thomas H. Black (Black), the owner of Royal College, appeal from an order of the district court denying their motion for assessment of prejudgment interest on insurance proceeds which plaintiffs were awarded after a jury trial. Defendant, Northern Insurance Company of New York (Northern), cross-appeals from an order of the district court denying Northern's motions for remittitur, a new trial, or judgment notwithstanding the verdict. Plaintiffs invoked jurisdiction of the district court pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship.

## FACTS

On February 3, 1982, Black and Royal College suffered a fire loss that closed Royal College, a landmark shoe store in the downtown retail area of Lawrence, Kansas. Royal College had been owned by Black's father from 1933 until 1966 when it was transferred to Black. The store was incorporated as a Subchapter S corporation and Black was the sole shareholder.

The fire in 1982, as well as smoke and water incident to the fire, destroyed a substantial portion of the building in which Black had a partial interest. Personal property owned by Black and Royal College inventory were also destroyed.

Plaintiffs timely filed a Proof of Loss with Northern, the company that insured the building, personal property, and inventory. Northern also insured the plaintiffs against loss of earnings resulting from the interruption of business. The policy limits were: $190,000 for damage to the building; $35,000 for damage to personal property; $165,000 for damage to the inventory; and $90,000 for loss of earnings. Northern refused to pay on plaintiffs' claim. This refusal resulted in the permanent closure of Royal College. On October 14, 1982, plaintiffs filed this lawsuit against Northern to recover the value of the lost business.

Immediately after the fire, the Douglas County Fire Investigation Unit began its examination of the fire scene to determine the cause and origin of the fire. Based on this investigation, the officer in charge of the Unit concluded that the fire had been intentionally set.

On October 14, 1982, criminal arson charges were filed against Black by the Douglas County, Kansas, district attorney in connection with the February 3, 1982, fire at Royal College. Black's trial, which commenced on May 2, 1984, ended in his conviction by a jury. This conviction was reversed by the Kansas Court of Appeals in December, 1985. A second arson trial commenced on May 28, 1986, which resulted in a hung jury. Thereafter, on July 23, 1986, the State of Kansas voluntarily dis-

missed with prejudice the criminal charges against Black.

This proceeding had been stayed on July 10, 1985, pending the outcome of the arson charges against Black. After the arson charges were dismissed, the district judge lifted the stay on August 18, 1986. The trial in the present action commenced on October 1, 1987.

In their proof of loss and at trial, plaintiffs claimed an inventory loss of $165,000 ($156,200.39 after plaintiffs received a salvage credit), $90,000 in loss of earnings, and $288,150 for the loss of business. Plaintiff Black further claimed the amounts of $24,749.44 for damage to his one-quarter interest in the building and $35,000 for loss or damage to personal property. These latter two amounts were stipulated to by the parties. On October 16, 1987, the jury returned a verdict in favor of plaintiffs for the following amounts: $24,749.44 for damage to the building; $35,000 for loss or damage to personal property; $100,000 for loss or damage to inventory; $60,000 for loss of earnings; and $175,000 in consequential damages for loss of the business as a going concern.

Plaintiffs moved post-trial for assessment of prejudgment interest on the amounts stated above. Northern filed a motion for judgment notwithstanding the verdict or in the alternative, a new trial, or in the alternative, for remittitur. These motions were denied. This appeal and cross-appeal followed. We affirm in part, reverse in part, and remand.

Plaintiffs do not assert that they are entitled to prejudgment interest on the amount awarded for the loss of the business as a going concern. They seek prejudgment interest only on the amount of the jury verdict attributable to damages recovered under the insurance policy.

This was a diversity action arising out of a fire insurance contract to be performed under Kansas law. Therefore, the law of the State of Kansas governs. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## ISSUES ON APPEAL

Plaintiffs, Royal College and Black, put forth the following issues on appeal:

I. Whether the district court erred in failing to assess prejudgment interest from the time of the suit, when the amount of plaintiffs' loss under the insurance policy was fairly ascertainable.

II. Whether the district court abused its discretion in failing to award prejudgment interest in order to make plaintiffs whole on moneys wrongfully withheld by Northern for over five years.

## I.

In resolving the first issue, the district court stated that "[p]laintiffs' claim upon the insurance policy in the instant case was not liquidated. The amount due plaintiffs under the policy, among other issues, was hotly contested. Therefore, under the general rule, plaintiffs' motion [for prejudgment interest] should be denied." (R., Suppl. Vol. I, Doc. 91 at p. 1). (Citations omitted). However, only a portion of plaintiffs' claims under the insurance policy were hotly contested or disputed. Northern stipulated to the loss or damage sustained by the building and the personal property.

The general rule of law in Kansas is that prejudgment interest is allowable on liquidated claims. *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653 (1984) "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation." *Id.* 682 P.2d at 657. *See Also Frank v. Bloom*, 634 F.2d 1245 (10th Cir.1980). According to Kan.Stat. Ann. § 16–201 (1980) "Creditors *shall* be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance...." (Emphasis added). Therefore, if a claim is liquidated,

prejudgment interest must be awarded. *In The Matter of Midland Industries, Inc.*, 237 Kan. 867, 703 P.2d 840, 842 (1985) ("Where an amount is due upon contract, either expressed or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due the creditor is *entitled* to recover interest from the due date.") (Emphasis added). *See Also Delano v. Kitch*, 663 F.2d 990, 1001 (10th Cir.1981).

The first question is whether the amounts claimed under the insurance contract were fixed, certain and ascertainable. Black submitted a Proof of Loss on May 11, 1982, for $24,749.44 for Black's one-quarter interest in the building, and $35,-000 for loss or damage to Black's personal property. Thereafter, Northern and plaintiffs stipulated to these exact losses. Because these two claims were not in dispute, the amount due was ascertainable. Thus, we hold that the district court erred in failing to award prejudgment interest on these two claims. The foregoing amounts were not only fixed, certain, and ascertainable, they were not even in dispute.

Our next inquiry must focus on the date the above amounts became fixed and certain. Plaintiffs contend that the damages to the personal property and the building were fixed and certain on May 11, 1982, the date on which payment was due under the policy, but in no event later than October 14, 1982, the day this lawsuit was filed. However, on the day that this lawsuit was filed, criminal arson charges were brought against Black concerning the fire at Royal College. Because of these arson charges, Northern refused to pay under the insurance contract. This refusal was based on Northern's belief that if Black should be convicted of criminal arson, Northern would not be liable for any amounts under the insurance contract. Northern therefore argues that an award of prejudgment interest, if any, should commence not on May 11, 1982, or October 14, 1982, but rather on July 23, 1986, when the charges against Black were dismissed.

■ We recognize that under Kansas law "[s]trong principles of public policy deny the insured the right to recover when he intentionally sets on fire property covered by the insurance contract." *Neises v. Solomon State Bank*, 236 Kan. 767, 696 P.2d 372, 378 (1985). However, the insurance contract between plaintiffs and Northern did not abrogate Northern's obligation to pay under the policy if the insured was charged with setting fire to the insured premises, nor did it provide for a delay in the payment of the proceeds should the insured be accused of or charged with setting fire to the insured premises. The courts will not make a contract of insurance, but will only enforce the intent of the parties as manifested by the writing. *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888–89 (10th Cir.1980); *Gibson v. Metropolitan Life Ins. Co.*, 213 Kan. 764, 518 P.2d 422 (1974). And it is fundamental that an insurance contract which is not ambiguous must be construed according to its terms. *Catts Co. v. Gulf Ins. Co.*, 723 F.2d 1494, 1501 (10th Cir.1983); *Maryland Cas. Co. v. Alliance Mut. Cas. Co., Inc.*, 223 Kan. 674, 576 P.2d 625 (1978). Furthermore, even should an ambiguity exist with respect to coverage, construction will favor the insured. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 597 P.2d 1080 (1979); *United Bank of Pueblo v. Hartford Acc. & Indem. Co.*, 529 F.2d 490, 494 (10th Cir.1976).

■ Under Kansas law, in determining whether prejudgment interest should be awarded in a breach of contract action, it is irrelevant that the underlying liability is disputed, so long as the amount of damages is certain. *Smart v. Hardware Dealers Mutual Fire Insurance Company*, 181 F.Supp. 575 (D.Kan.1960) (Where an insured building was destroyed and the sole dispute between the insured and insurer was whether the loss was caused by a covered risk, and the amount due the insured was not disputed if the loss was covered, a liquidated sum was involved, and the insured in whose favor a judgment was returned was entitled to recover prejudgment interest under Kansas law.) *See also Fanderlick–Locke Co. v. United States*, 285 F.2d 939 (10th Cir.1960).

■ Furthermore, the real estate interest and the personal property damage amounts of $24,749.44 and $35,000, respectively, did not become unliquidated simply because the plaintiffs requested additional unliquidated damages under the insurance policy. *See Schatz Distributing Co., Inc. v. Olivetti Corp.,* 7 Kan.App.2d 676, 646 647 P.2d 820, 827 (1982). Each element of damage covered under the insurance policy was separate and distinct. The insurance policy does not require that all property covered be destroyed before the insured is entitled to proceeds for the damages sustained by one item covered by the policy. (Appellants' Brief, Insurance Policy). Thus, the damages sustained by the building and the personal property are sufficiently independent to be isolated from the other damage claims for purposes of ascertaining whether they are liquidated. *Id.*

We therefore hold that the district court erred in refusing to grant prejudgment interest on the liquidated damages of $24,-749.44 and $35,000. We remand to the district court with instruction to award prejudgment interest from May 11, 1982, the date on which payment was due under the policy.

However, the damages plaintiffs claimed under the policy for damage or loss to inventory and loss of earnings were hotly contested. Those amounts were unliquidated claims because they were not fixed or certain. *In The Matter of Midland Industries, Inc.,* 237 Kan. 867, 703 P.2d 840 (1985). Plaintiffs claimed damages for the full policy limits of $165,000 ($156,200.39 after the salvage credit) for loss or damage to inventory and $90,000 for loss of earnings. However, Northern claimed that the maximum loss or damage to inventory was $92,635 and the loss of earnings was only $60,000. These two amounts were very much in dispute and were not ascertainable. *See Plains Resources, Inc.,* 682 P.2d at 657 (1984). We therefore hold that the district court did not err in denying prejudgment interest on these amounts.

II.

■ In the second issue on appeal, plaintiffs contend that the district court abused its discretion in failing to award prejudgment interest under the equitable theory to make plaintiffs whole. Plaintiffs claim that "[w]hen it is necessary to arrive at full compensation, the court has the discretion to award interest or its equivalent as an element of damages even if the primary damages are unliquidated." (Appellants' Brief at p. 17). Although that is a correct statement of the law, the key word in the foregoing quote is "discretion".

> As a general rule, prejudgment interest is not allowable on a claim for unliquidated damages. This rule is subject to the qualification however, that where necessary to arrive at full compensation, a court may *in the exercise of its discretion* award interest or its equivalent as an element of damages even where the primary damages are unliquidated. (Emphasis added)

*Schatz Distributing Co.,* 647 P.2d at 826. *See also Farmers State Bank v. Production Credit Association,* 243 Kan. 87, 755 P.2d 518 (1988).

In response to plaintiffs' claim for prejudgment interest under the court's discretionary authority, the district court stated:

> Kansas case law also recognizes a discretionary authority to award interest on unliquidated claims. Plaintiffs suggest that this court should exercise such discretion to award prejudgment interest where so much time has passed from the date of the fire loss to the date of judgment.
>
> The court does not believe prejudgment interest must be awarded in the interests of fairness. The court finds the jury award, which included an amount of compensatory damages for loss of business, adequate to compensate plaintiffs for the loss experienced from the fire. Furthermore, the delay in receiving compensation in this matter was not entirely the fault of defendant. Indeed, to some extent, plaintiffs countenanced the delay between the time this case was filed and the time of trial. Therefore, prejudgment interest should not be awarded.

(R., Supp. Vol. I, Doc. 91 at pp. 1–2).

According to *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986):

Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

Therefore, the issue is whether the district court abused its discretion in disallowing prejudgment interest on the unliquidated damages as sought by plaintiffs. We hold that the court did not.

The facts in the present case do not evoke application of the equitable principles of prejudgment interest. This case does not involve Northern's retention of money which it knew rightfully belonged to plaintiffs. To the contrary, based on the events preceding the fire, the evidence gathered from the fire scene, the conclusions of the Douglas County Fire Investigation Unit that the fire was intentionally set, as well as the indictment and subsequent criminal proceedings brought against Black for criminal arson, Northern reasonably believed that it was not liable for any amounts under the policy. Therefore, we hold that the district court was not in error for denying plaintiff's motion for prejudgment interest.

We hold that prejudgment interest should have been awarded on the damages sustained by the building and personal property, inasmuch as those two amounts were stipulated to and liquidated. We further hold that the district court did not abuse its discretion by denying plaintiffs' motion for prejudgment interest on the unliquidated damages for loss or damage to the inventory and the loss of earnings.

## ISSUES ON CROSS–APPEAL

Northern makes the following contentions in its cross-appeal:

I. The district court erred in denying Northern's motion for remittitur or new trial and entering judgment for plaintiffs on the jury's verdict because:

A. Consequential damages allegedly resulting from loss of the "going concern value" of a business are not recoverable under Kansas law;

B. Plaintiffs failed to produce substantial and competent evidence that the alleged loss of the "going concern value" of the business was the direct and proximate result of Northern's failure to pay the claimed insurance proceeds; there was absolutely no evidence that such damages were within the contemplation of the parties; and plaintiffs failed to prove their alleged loss with reasonable certainty;

C. The jury's award of $175,000 for the alleged loss of the business in addition to damages awarded under the policy for personal property, inventory and loss of earnings allowed plaintiffs to make a double recovery.

II. The district court erred in denying Northern's motion for new trial because instruction No. 10 did not properly apprise the jury of the applicable law.

III. The district court erred in denying Northern's motion for a new trial because instructions No. 4 and 8 incorrectly advised the jury that Northern must prove fraudulent statement or misrepresentation in the proof of loss by evidence that was clear and convincing. Furthermore, such instructions were confusing and misleading.

IV. The district court erred in denying Northern's motion for new trial because instruction No. 6 incorrectly stated that "The law presumes that a person would not burn his or her property." Furthermore, instruction No. 6 was confusing and misleading.

V. The district court erred in denying Northern's motion for a new trial because Northern was improperly barred from presenting competent, relevant evidence regarding the criminal proceedings brought against plaintiff Black.

VI. The cumulative prejudicial effect of the foregoing errors warrant a new trial.

VII. The district court erred in denying Northern's motion for judgment notwith-

standing the verdict because the jury's verdict demonstrated as a matter of law that the plaintiffs intentionally misrepresented and overvalued the amount of the loss.

In analyzing Northern's contentions, we will address each issue in the same order as stated above. However, we must first determine the correct standard of review.

■ "Federal law governs the decision whether a remittitur should be granted in a diversity case.... 'Under federal law, whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion standard.'" *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148, 1162 (10th Cir.1985), *quoting Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir.1981).

■ "A district court has broad discretion in deciding whether to grant a motion for a new trial.... In reviewing a district court's ruling on a motion for a new trial, a court of appeals does not make a determination of the sufficiency or weight of the evidence; rather, review is limited to whether the district court's refusal to set aside the jury's verdict constituted a manifest abuse of its discretion." *Patty Precision Products Co. v. Brown & Sharpe Manufacturing*, 846 F.2d 1247, 1251 (10th Cir.1988).

■ In determining whether the district court properly denied a motion for judgment notwithstanding the verdict, we must follow the federal standard. *Zimmerman v. First Federal Savings and Loan Ass'n.*, 848 F.2d 1047, 1051 (10th Cir.1988). "Under this standard, we may find error only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found; we must construe the evidence and inferences most favorably to the nonmoving party." *Id.*

## I.

■ Northern argues that the district court should have granted its motion for remittitur or new trial or for judgment notwithstanding the verdict because consequential damages allegedly resulting from the loss of the business as a going concern are not recoverable under Kansas law. This contention is in response to the jury verdict awarding plaintiffs $175,000 for the loss of the business. According to Northern, plaintiffs' claim for the alleged loss of the business should not have been submitted to the jury.

The Kansas Supreme Court has not directly addressed the issue of consequential damages in an insurance contract. "[A] federal court attempting to forecast state law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.1980).

Northern relies almost exclusively on *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980), for the proposition that consequential damages are not recoverable in an action for breach of an insurance contract. In *Spencer*, an insured sought recovery for mental anguish caused by Northern's wrongful refusal to pay her claim. *Spencer* was concerned with whether Kansas recognized bad faith as an independent tort for recovery under an insurance policy. The Kansas Supreme Court concluded that since the Kansas Legislature has provided detailed and effective penalties and remedies, which are enforceable against companies that fail to settle claims with their policy holders, it is undesirable for the court to expand such remedies by judicial decree.

Therefore, according to Northern, statutory penalties are exclusive remedies against a company that wrongfully refuses to pay an insured's claim. The insured may not, Northern reasons, resort to other common law remedies for breach of contract, including consequential damages.

The district court, in denying Northern's motion for remittitur, a new trial, or for judgment notwithstanding the verdict, re-

lied on *Earth Scientists v. United States Fidelity & Guaranty Co.,* 619 F.Supp. 1465 (D.Kan.1985). The district court found that according to *Earth Scientists,* the *Spencer* holding dealt only with the question of whether or not Kansas should recognize the tort of bad faith; it did not take away any traditional contract remedies in an insurance contract case. "A review of other Kansas cases reveals that the general rule in Kansas is clearly that the damages recoverable for a breach of an insurance contract are the same as those available for breach of contract." *Id.* at 1475. Therefore, because consequential damages have traditionally been allowed in breach of contract actions, *Spencer* does not preclude such an award if the circumstances so warrant.

The district court and the plaintiffs also relied on *Hochman v. American Family Insurance Co.,* 9 Kan.App.2d 151, 673 P.2d 1200 (1984) for the proposition that Kansas allows consequential damages for breach of an insurance contract. In *Hochman,* defendant insurer breached its insurance contract by refusing to pay for repairs to a damaged combine. Because defendant refused to pay on its policy, plaintiffs were forced to borrow the money for the repairs, thereby incurring interest. The Kansas Court of Appeals in *Hochman* held that the interest debt arose in the usual course of the contract between the parties and from the breach itself. Thus, the interest was recoverable as consequential damages. *See Also Earth Scientists,* 619 F.Supp. at 1475 ("[A]n insured is entitled to state a claim for recovery of lost profits if he can show that the lost profits arose in the usual course of things and directly from the defendant's failure to pay on the policy."), and *Kansas State Bank v. Overseas Motosport,* 222 Kan. 26, 563 P.2d 414 (1977).

After reviewing the foregoing law, we hold that the district court did not abuse its discretion in denying Northern's motion for remittitur or a new trial. Further, the evidence was not so one-sided as to require that the district court grant Northern's motion for judgment notwithstanding the verdict. There is substantial legal authority supporting the district court's rulings on these matters. We therefore affirm the district court's denial of Northern's motions on this issue.

■ Northern next contends that the district court erred in denying its motion for remittitur or new trial and for entering judgment on the jury's verdict because plaintiffs failed to produce substantial and competent evidence that the alleged loss of the "going concern value" of the business was the direct and proximate result of Northern's failure to pay the claimed insurance proceeds; there was no evidence that such damages were within the contemplation of the parties; and plaintiffs failed to prove their alleged loss with reasonable certainty.

The district court discussed these contentions and disagreed with the Northern on every point. First, the court found that there was sufficient evidence to support plaintiffs' loss of business claim to allow a reasonable jury to conclude that the loss of business arose directly from Northern's failure to pay on the policy. Further, Northern could have contemplated that loss as a reasonable consequence of breaching the contract. Plaintiffs presented the expert testimony and analysis of a certified public accountant experienced in the valuation of businesses. This evidence supported plaintiffs' claim for damages for loss of the business as a going concern.

Once again, we cannot say that the district court abused its discretion in refusing Northern's motions for remittitur or a new trial. Furthermore, both Northern and the plaintiff had the opportunity to present their respective arguments on this point through expert witnesses. The jury apparently found plaintiffs' expert more persuasive. Thus, we cannot overturn the district court's denial of a judgment notwithstanding the verdict. Obviously, there was evidence to support the jury's award.

■ Northern also argues that the loss of the "going concern value" of the business was not within the contemplation of the parties when they entered into this insurance contract.

Under *Hochman*, 673 P.2d at 1202–1203, "damages recoverable for breach of contract are limited to those which may fairly be considered as arising, in the usual course of things, from the breach itself, *or* as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." (Emphasis added). Thus, the disjunctive "or" demonstrates that the language "usual course of things" may be used in the place of "within the contemplation of the parties." Both permissible standards afford the jury a course of finding that the damage was not a remote, unforeseeable event unrelated to the breach itself. Therefore, plaintiffs were required to prove *either* that the damages arose in the usual course of things, from the breach itself, or that the damages were within the contemplation of the parties. According to the law of Kansas, plaintiffs were not required to prove both.

However, we believe that both of these requirements were satisfied. It is elementary that a business obtains insurance against fire loss for protection and to restore itself to the status quo, i.e., the status before the fire. If a fire should occur, and the insurance company should refuse to pay under the policy, a business could be forced to close down for lack of finances. Furthermore, as the district court stated, it was reasonable for the jury in this case to conclude that the parties to the insurance contract reasonably anticipated that the failure to pay upon the contract following a fire would prevent plaintiffs from restarting their business. Accordingly, it was proper to permit the jury to award damages for loss of business if it fairly arose from the failure to pay on the insurance policy. We hold that the district court did not abuse its discretion when it refused Northern's motions on this claim.

■ Northern further argues that the plaintiffs failed to prove their alleged loss of the business with reasonable certainty. In addressing this contention, the district court stated that "we believe there was sufficient evidence in support of plaintiffs' loss of business claim to allow a reasonable jury to conclude that the loss of business arose directly from Northern's failure to pay on the policy." (R., Vol. I, Doc. 92 at p. 4). As stated before, the evidence presented by plaintiff came through the expert testimony and analysis of a certified public accountant experienced in the valuation of businesses. Northern also provided evidence through an expert witness. The jury weighed this evidence and returned a verdict in favor of the plaintiff for $175,000 to compensate for the loss of the business. The district court found that there was sufficient evidence to allow the jury to determine that because of Northern's refusal to pay under the policy, plaintiff Black lost his business. We cannot say that the district court abused its discretion in this regard. We do not believe that the district court made a clear error of judgment or exceeded its bounds. Therefore, we affirm the district court's ruling on this issue.

■ Northern also contends that the jury's award of $175,000 for the loss of the business, in addition to damages awarded under the policy for personal property, inventory, and loss of earnings, allowed plaintiffs to make a double recovery. The court rejected this argument for several reasons. First, the jury was instructed that plaintiffs' loss of business claim was for losses other than those compensated under the insurance policy. (R., Vol. I, Doc. 92 at p. 7). Second, Northern's counsel had the opportunity to clarify the similarities and differences between plaintiffs' claims under the insurance policy and the claim for loss of business through cross-examination and argument. *Id.* Furthermore, the total amount awarded by the jury was less than the value of the business as estimated by plaintiffs' expert. *Id.* Finally, the court also noted that the loss of earnings provision of the insurance contract only covered earnings lost over a limited period of time. (See Appellants' Brief, Insurance Contract, at p. B–18). Therefore, the court found that the loss of earnings was not significantly intertwined with the value of the business.

We agree with the district court and hold that the jury's award of $175,000 for the loss of the business as a going concern did not allow the plaintiff double recovery, although the jury also awarded damages for loss of earnings, damage to inventory, and damage to personal property. We agree with the district court that the loss of earnings provision in the insurance contract only covered earnings over a limited period of time. This provision in the insurance contract states as follows:

> The Company shall be liable for:
>
> a. the actual loss sustained by the insured resulting directly from necessary interruption of business, ... *for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described* as has been damaged or destroyed,.... The term "directly," as applied to loss under this endorsement, means loss, as limited and conditioned in this policy, resulting from direct loss to described property from the perils insured against.... (Emphasis added)

(Appellants' Brief, Insurance Contract at pp. B–18 and 19). Therefore, the policy itself provides that the insured's loss of earnings coverage extends only for a limited period of time.

Furthermore, the loss of earnings provision covers only the losses occasioned by the "perils insured against," such as the fire. The money plaintiffs claim for loss of the business as a going concern did not arise from the perils insured against. The jury found that those damages arose by Northern's failure to pay under the insurance policy. Therefore, the damages granted by the jury to the plaintiff cover two separate and distinct injuries. The awards for the loss of earnings, and loss or damage to the inventory and personal property were to compensate for plaintiffs' losses under the insurance policy. The award of $175,000 for the loss of the business as a going concern was to compensate plaintiffs for their injuries in being unable to reopen Royal College. This latter award was in direct response to Northern's failure to pay

the proceeds of the insurance policy. Awarding the amount due under the contract and consequential damages for its breach does not constitute double recovery. *See Salamey v. Aetna Casualty & Surety Co.,* 741 F.2d 874, 877 (6th Cir.1984) (" '[t]he policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach,' " *quoting Lawton v. Great Southwest Fire Insurance Co.,* 118 N.H. 607, 392 A.2d 576, 579 (1978)).

Plaintiffs not only lost the money they should have been paid to reopen the business, they lost the business itself. These are two different elements of damages. Thus, in order to return plaintiffs to the position they would have occupied had Northern performed under the contract, they must be compensated for the lost value of the business.

We cannot hold that the district court abused its discretion by failing to grant Northern's motion for remittitur or new trial on this issue. Further, the district court did not err in entering judgment on the jury's verdict for loss of earnings, damage to the inventory and personal property, and the loss of the business.

## II.

Northern further contends that the district court erred in denying Northern's motion for a new trial because instruction No. 10 did not properly apprise the jury of the applicable law.

As stated before, the district court has broad discretion to decide whether to grant a motion for a new trial. *Patty Precision Products Co.,* 846 F.2d at 1251. Further, an appellate court's review of a district court's denial of a new trial is limited to whether the district court abused its discretion. *Id.* In addition:

> [w]hen examining a challenge to jury instructions, we review the record as a whole to determine whether the instructions 'state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable.' *Ramsey v. Culpepper,* 738

F.2d 1092, 1098 (10th Cir.1984). We thus "consider all that the jury heard and, from standpoint of the jury, decide 'not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues.'" (Citations omitted).

*Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir. 1988). Therefore, our review of the jury instructions is fairly limited.

The jury instruction in question stated that:

> If you find that plaintiffs have proven their business ceased because of defendant's failure to pay on the insurance policy, then you should further award such sum as you believe plaintiffs have proven will compensate them for loss of business which arose in the usual course of things and directly from defendant's failure to pay on the policy.

(R., Vol. I, Doc. 76 at p. 13). Northern argues that this instruction did not include all the elements necessary to support an award of damages for loss of the business.

> In order for the plaintiffs to recover consequential damages, they must show and the jury must find, not only that such damages arose in the usual course of things and directly from defendant's failure to pay on the policy, but also (1) that the loss of business was proved with reasonable certainty and (2) that such damages were within the contemplation of the parties at the time the contract was entered into.

(Appellee/Cross Appellant's Brief, at pp. 34–35). In essence, this is the same argument raised previously by Northern. Northern argues that absent an additional finding by the jury that plaintiffs' loss was shown with reasonable certainty and that loss of plaintiffs' business was within the contemplation of the parties, the plaintiffs were not entitled to an award of consequential damages. However, as stated before, the law in Kansas is that plaintiff may recover damages for breach of contract that arose in the usual course of things, from the breach itself, *or* as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach. *Hochman*, 673 P.2d at 1203. Therefore, Northern's interpretation of the law on this subject is incorrect in that plaintiffs were only required to prove one of the foregoing requirements. Thus, we hold that the district court did not abuse its discretion denying Northern's motion for a new trial based on instruction number 10.

### III.

Northern's third contention on appeal is that the district court erred in denying its motion for a new trial because instructions number four and eight incorrectly advised the jury that Northern must prove fraudulent statement or misrepresentation in the proof of loss by evidence that was clear and convincing. Furthermore, Northern argues that these instructions were confusing and misleading.

Northern disagrees with the following language, as set out in instruction number four:

> A special rule of law, which is relevant to defendant's defense of fraudulent statement or misrepresentation, requires that to prove fraud *it is necessary for the party claiming fraud to prove it by evidence that is clear and convincing.* To be clear and convincing, evidence should be 'clear' in the sense that it is certain, plain to the understanding, unambiguous, and "convincing" in the sense that it is so reasonable and persuasive as to cause you to believe it. (Emphasis added)

(R., Vol. I, Doc. 76 at p. 6). Furthermore, Northern disagrees with similar language in instruction number eight. Instruction number eight states in part:

> [t]hus, in order to prevail upon this affirmative defense, defendant must prove by *clear and convincing evidence:*
>
> (1) that either one or both of the plaintiffs made a misrepresentation which was false and material;
>
> (2) that the maker of the misrepresentation knew the misrepresentation was

false or made it recklessly without knowledge of its truth; and

(3) that the misrepresentation was made with the intent that the defendant accept it as true and act upon it. (Emphasis added).

*Id.* at p. 11.

Northern's assertion is that a claim of fraud or misrepresentation must be proved by a preponderance of the evidence. However, under Kansas law, "[e]vidence supporting a finding of fraud must be clear and convincing." *K–B Trucking Company,* 763 F.2d at 1156 (applying Kansas law). *See also W–V Enterprises, Inc. v. Federal Savings & Loan Ins Corp.,* 234 Kan. 354, 673 P.2d 1112, 1121 (1983) (Fraud is never presumed and must be proven by clear and convincing evidence), and *Hoch v. Hoch,* 187 Kan. 730, 359 P.2d 839, 841 (1961). Thus, the courts of Kansas have specifically followed the rule that fraud or material misrepresentation must be proved by clear and convincing evidence. The district court obviously did not abuse it's discretion by giving an instruction stating the correct Kansas law. We hold that the district court properly denied the motion for a new trial.

Furthermore, Northern claims that instructions four and eight were confusing and misleading. However, it does not appear that this confusion issue was raised in the district court. Therefore, because Northern did not raise this issue in the district court and it has failed to demonstrate plain error in these instructions, there are no grounds for relief. Issues not raised in the trial court will not be considered on appeal absent exceptional circumstances or manifest injustice. *United States v. Oakes,* 564 F.2d 384 (10th Cir. 1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *Burnette v. Dresser Industries, Inc.,* 849 F.2d 1277 (10th Cir.1988).

## IV.

Northern next argues that the district court erred in denying its motion for a new trial because instruction number six incorrectly stated that "[t]he law presumes

that a person would not burn his or her property." (R., Vol. I, Doc. 76 at p. 7). Furthermore, Northern asserts that instruction number six is confusing and misleading.

The district court addressed this argument and found that the instruction is in accord with the burden of proof carried by Northern in this case. The court also found that the statement criticized by Northern is in accord with the presumption of legality recognized by state and federal courts. *See Beardsley v. Weber,* 213 Kan. 427, 516 P.2d 936, 939 (1973) ("A person is presumed to intend obedience to and compliance with the provisions of the law."); *National Labor Relations Board v. Shawnee Industries, Inc.,* 333 F.2d 221, 225 (10th Cir.1964) ("It is presumed that a person obeys the law and discharges the obligations imposed on him by law.").

The use of this presumption is further underscored in other sources:

The law presumes in favor of integrity of conduct, the presumption being that an individual intends to do right rather than wrong, and intends to do only what he has the right to do. Generally speaking, in the absence of proof to the contrary, there is a presumption that all men act fairly, honestly, and in good faith.

The presumption is that the law has been obeyed, it being presumed, in the absence of proof to the contrary, that everyone obeys the law, and does not intend to violate it, which presumption is closely allied to the presumption of innocence which prevails in criminal cases.

29 Am.Jur.2d *Evidence* Sec. 168 (1967 & Supp.1988).

As the district court ruled, the presumption that a person would obey the law and, as in this case, not burn his or her own property, is well rooted in Kansas law. Therefore, when viewed on the whole, these instructions afford no basis for reversal, even if it were determined that they were not faultless in every particular. We hold that the jury was not misled in any way by this instruction. Further, the dis-

trict court did not abuse its discretion by denying Northern's motion for a new trial.

Northern also contends that the court may have confused the jury by using the term "arson." Northern suggests that the jury may have thought that Northern was required to prove beyond a reasonable doubt that plaintiff Black intentionally set the fire at Royal College. However, in this argument, Northern completely ignores instruction number four in which the court explicitly stated that this is not a criminal case and "proof beyond a reasonable doubt" has no application. We hold that there was no cause for confusion by use of the term "arson."

## V.

Northern's next contention of error is that the district court erred in denying its motion for a new trial because it was improperly barred from presenting competent, relevant evidence regarding the criminal proceedings brought against plaintiff Black. Northern asserts that to rebut plaintiffs' contention that the failure to pay the amounts claimed under the insurance policy was the proximate cause of their alleged loss of business, Northern attempted to present relevant evidence about the criminal arson charges brought against Black. According to Northern, evidence that Black was charged with arson and was subsequently involved in two criminal trials had a direct bearing on the reputation of Royal College and its standing in the community,

"The decision to exclude (or admit) evidence under [Federal Evidence Rule 403] ... is within the sound discretion of the trial court, and will not be reversed by this court absent a clear abuse of discretion." K–B Trucking Co., 763 F.2d at 1155. See also United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988). We hold that the district court did not abuse its discretion by excluding evidence regarding the criminal proceedings brought against Black.

Prior to trial, plaintiffs brought a Motion in Limine to exclude evidence of the criminal proceedings that had been brought against Black. Northern responded to this motion. However, because Northern has failed to provide us with a copy of this response, we are unable to determine what it included. Therefore, we must rely solely on the district court's ruling to enlighten us on this issue.

The district court stated, in response to this contention, that Northern did not object to plaintiffs' motion asking that there be no reference to the criminal litigation during the trial of this case. "Defendant should not be allowed to argue at the end of trial that it could not mention the criminal litigation when it did not object to such a limitation before the trial." (R., Vol. I, Doc. 92, at p. 6). Furthermore, Northern has not proffered any evidence to uphold the claim that the criminal litigation would have affected the value of the business. Finally, the district court noted that after the court granted plaintiffs' Motion in Limine, Northern seemed to ignore the ruling at trial. "Rather than ask for reconsideration of the ruling, defendant simply requested leave to mention the criminal case without suggesting any changed circumstances which might justify modifying the previous ruling. Nor has defendant demonstrated that the evidence in question was more probative than prejudicial to the trial of this case." Id. at p. 7.

Furthermore, Mr. McCann, attorney for Northern, made the following statement during a chamber conference concerning the criminal proceedings: "I couldn't agree with the court and Mr. Lungstrum [attorney for plaintiffs] more that what happened in the criminal trial with respect to conviction or not conviction is not part of this case." (R., Vol. II, at. p. 6). Thus, Northern specifically conceded that evidence of the criminal trials of Black were irrelevant in this civil proceeding. After conceding the issue at trial, Northern nevertheless proceeded on appeal to attempt to persuade us that the district court erred by granting plaintiffs' Motion in Limine. In doing so, Northern has directed us to a phantom issue. We hold that the district court did not abuse its discretion in denying Northern's motion for a new trial.

## VI.

Northern's sixth contention is that the cumulative prejudicial effect of the foregoing errors warrant a new trial. Northern urges the court to set aside the judgment on a "totality of the circumstances" theory. "Assuming that the Court does not find that any single point of error standing alone requires that the judgment be set aside, when the Court views the points of error in their totality, it will be clear that the cumulative prejudicial effect of such errors warrant a new trial." (Appellee's/Cross–Appellant's Brief at p. 45). However, as the foregoing discussion indicates, we have found no error in the district court's rulings concerning Northern's contentions. The only modification we shall direct concerns the plaintiffs' appeal seeking prejudgment interest. We decline to follow Northern's recommendation.

## VII.

The final contention presented by Northern on this cross-appeal is that the district court erred in denying its motion for judgment notwithstanding the verdict because the jury's verdict demonstrated as a matter of law that the plaintiffs intentionally misrepresented and overvalued the amount of the loss. Northern's argument is that the jury verdict indicates that the plaintiffs grossly overvalued the amount of their claim.

Northern asserts that plaintiffs, in their proof of loss and at trial, claimed an inventory loss of $165,000, $90,000 in loss of earnings, and $488,150 for loss of the business. The jury awarded plaintiffs $100,000 for the inventory loss, $60,000 for loss of earnings, and $175,000 for the loss of the business. This represents overstatements of 65%, 50%, and 179%, respectively. Northern therefore argues that:

it is obvious that the plaintiffs so grossly overstated the amount of their claim that they knew such misrepresentations were false or were made recklessly without knowledge of their truth with the intent that defendant would pay the amount of the claim.

[P]laintiffs have breached the fraud and concealment conditions of the policy as a matter of law. Since the plaintiffs were barred from recovering under the policy, the district court erred in failing to grant defendant's motion for judgment notwithstanding the verdict.

(Appellee's/Cross–Appellant's Brief at p. 47).

However, the foregoing figures used by the Northern were not the damages sought by plaintiffs. Northern knows that the going concern value claimed, after deducting the hard assets of the business already covered under the insurance policy, was $288,150. This is the amount of damages plaintiffs sought for loss of the business as a going concern. Furthermore, Northern knows that the inventory claim was for $156,200.39, not $165,000, owing to a salvage credit. Thus, Northern has seriously exaggerated its claim to a judgment notwithstanding a verdict based on inflated figures.

The district court, in denying Northern's motion, stated that:

[t]he misrepresentation claim, of course, was made to the jury. The jury had the opportunity to determine whether plaintiffs willfully concealed or misrepresented a material fact concerning the insurance. The jury answered this question 'no' despite awarding damages in a lesser amount than plaintiffs' sworn statement in proof of loss to the defendant. Given the difficulty in determining the damage to the inventory and the loss of earnings following the fire, the court believes no grounds exist for vacating the jury's decision and holding as a matter of law that plaintiffs made fraudulent or intentional misrepresentations.

(R., Vol. I, Doc. 92, at p. 8). We agree.

As stated previously, "[i]n reviewing a district court's denial of a motion for a judgment n.o.v., we may find error only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made." *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988). Furthermore,

"[j]udgment n.o.v. is proper only when the evidence so strongly supports an issue that reasonable minds could not differ." *Delano*, 663 F.2d at 1003.

 A question of fraudulent overvaluation in a proof of loss is one for the jury. *Hargrove v. American Cent. Ins. Co.*, 125 F.2d 225, 228 (10th Cir.1942). In addition,

> [w]here an insured knowingly and willfully over-estimates the value the property destroyed in his proof of loss, with the intention to deceive the insurer, the policy is voided and the insured's right to recover theron is defeated. However, mere mistake, inadvertence or a good faith belief as to the value of the insured property will not sustain a charge of fraud or false swearing.
>
> And, in a case where there is evidence to support a finding of fraud and false swearing and, also, evidence justifying a finding to the contrary, the issue is one for determination by the trier of fact.

*Transportation Insurance Company v. Hamilton*, 316 F.2d 294, 296–297 (10th Cir. 1963). In other words, the claim must stand, not upon its accuracy, but upon its bona fides. Thus, where an insured is honestly and in good faith mistaken as to the amount of the loss and he does not deliberately try to deceive the fire insurer on any material facts, he can recover the reasonable value of property destroyed in the fire, and there is no false swearing as will void the policies even though the reasonable value of the property is less than that submitted in the proof of loss. *Buffalo Insurance Company v. Amyx*, 262 F.2d 898 (10th Cir.1958). Therefore, recovery is not barred for fraudulent overvaluation simply because the jury returns a verdict for an amount less than that claimed by the insured. *See also Insurance Co. of North America v. Musa*, 785 F.2d 370 (1st Cir. 1986) (Directed verdict and judgment notwithstanding the verdict improper because the jury was entitled to believe that the store owner did not have the requisite intent to defraud), and *Stebane Nash Co. v. Campbellsport Mutual Ins. Co.*, 27 Wis.2d 112, 133 N.W.2d 737 (1965).

There was evidence to support the plaintiffs' claims in this lawsuit. The jury's verdict did not demonstrate as a matter of law that plaintiffs intentionally misrepresented and overvalued the amount of the loss. The fact that the jury returns a verdict for an amount less than that claimed by the insured does not necessarily establish fraudulent overvaluation in the proof of loss. Therefore, we shall not reverse the district court's ruling on this issue.

## CONCLUSION

We reverse the district court's order denying plaintiffs' motion for assessment of prejudgment interest on the liquidated damages of $24,749.44 for damage to the building and $35,000 for loss or damage to Black's personal property. It is further ordered that this interest shall run from May 11, 1982, the date on which payment was due under the policy, until the jury returned its verdict on October 16, 1987. We affirm the district court's denial of prejudgment interest on the unliquidated damages.

Furthermore, Northern has failed to demonstrate any abuse of discretion in the district court's failure to grant a new trial or remittitur. Northern has also failed to demonstrate any error affecting substantial rights in the submission of consequential damages to the jury, in the jury instructions, or in any rulings during and after the trial. Northern was not entitled to a judgment notwithstanding the verdict on any issue raised in its cross-appeal.

AFFIRMED in part and REVERSED in part, and REMANDED.