13 F.3d 405
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Dannie L. HARVEY, Plaintiff-Appellant-Cross-Appellee,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee-Cross-Appellant,
Mark WHITAKER, Deana MELCHERT, Defendants-Appellees.
 Nos. 92-3311, 92-3320.
 United States Court of Appeals, Tenth Circuit.
 Dec. 21, 1993.
 
 ORDER AND JUDGMENT[1]
 Before TACHA, GOODWIN[2] and BRORBY, Circuit Judges.
 
 
 1
 Dannie L. Harvey appeals a district court order reducing her jury award on one breach of insurance contract claim and awarding Allstate Insurance ("Allstate") a judgment notwithstanding the verdict on a second claim. She also contends that the court erred in calculating her attorney fee award. Allstate cross-appeals the district court's decision to impose rule 11 sanctions in favor of O.R. Whitaker. We reverse, reinstate the jury verdict and award Harvey attorney's fees. In addition, we affirm the district court order imposing Rule 11 sanctions.
 
 I. FACTS AND PROCEDURAL BACKGROUND
 
 2
 In 1984, Harvey sued her employer, the Citizen's State Bank of Liberal Kansas ("Citizen's"), and its president, O.R. Whitaker, for sexual harassment, discrimination, and defamation. Whitaker counterclaimed for libel and slander, requesting a million dollars in punitive damages. Both Whitaker and Harvey were insured by Allstate, under identical homeowner's personal umbrella policies. This policy explicitly promised to defend Harvey against the exact claim Whitaker had filed.
 
 
 3
 Harvey first sought Allstate's help in July, 1984, contacting her insurance agent, Terry Riney, by telephone.[3] Riney incorrectly informed her that she was not covered. Because Riney kept all copies of the Harveys' insurance policies in his office, Harvey and her husband took him at his word. Therefor, from July 1984 until April, 1985, Harvey defended against Whitaker's counterclaim without Allstate's help. During this period, Whitaker pursued a scorched earth counterclaim and defense, taking eighty depositions. Because of limited funds, Harvey attended some of these depositions herself. Finally, in April, 1985, she again contacted Riney, who sent a letter to Allstate requesting a defense.
 
 
 4
 Riney suggested that Allstate simply retain Harvey's current counsel, Dennis E. Egan, who had been working on the case for the past year, to defend the counterclaim. However, Allstate instead hired Lee McMaster, a Witcheta attorney who had a long relationship with Allstate, as well as a close friendship with Whitaker 's attorney, but no particular expertise in defamation or slander cases and negative attitudes about sexual harassment cases.[4] McMaster admitted that he kept Allstate's interests in mind while "defending" Harvey and that he advised Allstate on the policy coverage issue even after he had agreed to represent Harvey.
 
 
 5
 Although Allstate retained McMaster on April 30, 1985, he did not enter his appearance until June 28, almost two months later. McMaster never met his client and did not attend a single one of the twenty-seven depositions taken between April, 1985 and September, 1985, even though Harvey's lawyer requested his help. Harvey continued to attend some depositions alone. Although Egan's office researched defenses to the counterclaim and forwarded McMaster a draft motion to dismiss, he took no action to file this motion. Allstate representatives testified that they did not tell McMaster not to attend depositions, but admitted that they were responsible for supervising his defense.
 
 
 6
 Meanwhile, although Allstate agents testified at trial that "coverage had been verified" by May 3, 1985 and Allstate's internal memoranda confirmed this testimony, Allstate continued to contest coverage. On July 15, 1985, Allstate filed a declaratory judgment action against Harvey, Whitaker, and Citizen's, seeking to eliminate liability altogether. Evidence presented at trial suggests that both McMaster and the Allstate agent responsible for supervising Harvey's defense were extensively involved in this declaratory judgement action, and that McMaster was in contact with Allstate's coverage attorney.[5]
 
 
 7
 Harvey and Whitaker settled the underlying sexual harassment and defamation cases in September, 1985. Pursuant to the settlement, Harvey received $360,000 for her claims against Whitaker and Whitaker received $10,000 on his counterclaim. At this point, Whitaker and Citizen's had spent over $1 million dollars to prosecute and defend the litigation; Egan had billed Harvey for $169,000 and Allstate had spent only $2,513.
 
 
 8
 Allstate then filed a motion to dismiss its declaratory judgment action, arguing that the coverage issue was moot. Harvey opposed this dismissal, counterclaiming for (1) reimbursement for legal expenses incurred between July, 1984, when she first asked her agent for coverage, and April, 1985, when Allstate hired McMaster; (2) reimbursement for expenses incurred after April, 1985 because Allstate provided a sham defense; and (3) attorney's fees for defending against Allstate's declaratory judgment action.
 
 
 9
 Whitaker also filed a cross-complaint seeking attorney's fees. However, after Allstate moved to dismiss its complaint, Whitaker moved to dismiss his counterclaim and withdraw from the litigation. Allstate refused to agree to his withdrawal, despite Whitaker's counsel's repeated requests. The district court later found these refusals were unreasonable and awarded Whitaker sanctions under Fed. R. Civ. Proc. 11.
 
 
 10
 Harvey's breach of contract counterclaims went to a jury trial, and the jury awarded her $60,000 in damages for Allstate's failure to defend her from July, 1984 until April, 1985 and $34,000 for providing a sham defense thereafter. The district court then reduced the damages on the former claim to $25,921.43 and granted Allstate's motion for Judgment Notwithstanding the Verdict on the latter claim. The court also awarded Harvey attorney's fees for defending against Allstate's declaratory judgment action; however the court found that Harvey was entitled to recover fees only for defending against the declaratory judgment action and not for pursuing her counterclaims after Allstate moved to dismiss its complaint. Thus, the court awarded her only $3,340 of the $47,000 fees she requested. This appeal followed.
 
 
 11
 II. DAMAGES FOR ALLSTATE'S FAILURE TO DEFEND BETWEEN JULY,
 
 1984--APRIL 1985
 
 12
 Allstate's brief continues to dispute liability for the period between July, 1984 and April, 1985, arguing that the Harveys' notice to Riney did not exist or was insufficient. Allstate contends that there was "no evidence" Riney was notified of Whitaker's counterclaim in July 1984 and that Riney was an independent agent such that oral notice to him was not sufficient.
 
 
 13
 These contentions are wholly without merit. Both Harvey and her husband testified that they notified Riney by phone in July 1984 and both the Harveys and Riney testified that he was an Allstate agent.[6] The jury obviously found this testimony credible and resolved this factual dispute in favor of the Harveys. The district court correctly found that it had no reason to disturb this factual finding, and Allstate has not shown that the court manifestly abused its discretion in denying Allstate's motion for a judgment notwithstanding the verdict on this ground. Royal College Shop v. North Ins. Co., 895 F.2d 670, 677 (10th Cir.1990).
 
 
 14
 The remaining question is whether the district court correctly reduced Harvey's damages. We review the grant of a judgment notwithstanding the verdict de novo, and apply the same standard as the trial court. Meyers v. Ideal Basic Industries, 940 F.2d 1379, 1383 (10th Cir.), cert denied, 112 S.Ct. 935 (1991). A trial court may not disturb a jury verdict awarding damages unless the award is so excessive or so inadequate as to shock the conscience and raise an irresistible inference that some improper cause influenced the jury. Moore v. Subaru of America, 891 F.2d 1445, 1451 (10th Cir.1989); Acree v. Minolta Corp., 748 F.2d 1382, 1388 (10th Cir.1984).
 
 
 15
 Here, the jury awarded Harvey a total of $94,000: $60,000 for the period between July 1984 and April, 1985 and $34,000 for the period after McMaster took over the case. This figure is considerably less than the Egan's total fee of $169,000[7] and considerably less than the amount Whitaker's insurance paid. Thus, we cannot find it was "clearly excessive." Rather, the jury appears to have employed a reasonable, although not necessarily technically correct, method of estimating the costs of defending the counterclaim.[8] See Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1388 (10th Cir.), cert. denied, 455 U.S. 1019 (1981) ("A reasonable basis for computation [of damages] and the best evidence available under the circumstances is sufficient.").
 
 
 16
 The district court reduced Harvey's recovery because it found she could not recover more than the difference between the amount she owed Egan under the continent fee agreement ($144,000) and Egan's hourly fees ($169,921.43). The court reasoned that Harvey would have had to pay Egan $144,000 under the contingent fee agreement regardless of the counterclaim, and thus could not fairly recover more for the counterclaim than the difference between the contingent fee and Egan's hourly fee. Although this may be a plausible method of estimating the costs attributable to defending the counterclaim, it not necessarily more accurate than the jury's method. Uncontradicted evidence showed that Harvey reduced Egan's total hourly fee by attending depositions herself. Moreover, Harvey is not necessarily barred from recovering costs which would have been incurred defending the counterclaim, even if these same costs would have been incurred prosecuting her claim. Thus, we reject the theory that Harvey's award should necessarily be limited by Egan's total hourly fee.
 
 
 17
 Because the jury's award was not clearly excessive, the district court erred in reducing it to $25,921.43.
 
 
 18
 III. DAMAGES FOR PROVIDING A SHAM DEFENSE AFTER APRIL, 1985
 
 
 19
 The district court also erred in granting Allstate's motion for judgment notwithstanding the verdict on Harvey's claim that Allstate provided a sham defense after April, 1985. A JNOV is appropriate "only if the evidence points but one way and is susceptible of no reasonable inferences supporting the party for whom the jury found." Royal College Shop v. North Insurance Co. of N.Y., 895 F.2d 670 (10th Cir.1990). Courts "must construe the evidence and inferences in a light most favorable to the non-moving party," Meyers v. Ideal Basic Industries, 940 F.2d 1379, 1383 (10th Cir.), cert. denied, 112 S.Ct. 935 (1991), and should not grant the motion unless "the evidence so conclusively favors [the moving party] that reasonable jurors could not arrive at a contrary verdict." Anderson v. Phillips Petroleum Co, 861 F.2d 631, 634 (10th Cir.1988).
 
 
 20
 Allstate has not met these stringent requirements. There was ample evidence to support a finding that Allstate acted in bad faith in defending Harvey after April, 1985. Evidence presented at trial showed that Allstate hired an attorney who had no intention of jeopardizing his continuing employment with Allstate. Moreover, this lawyer worked on the coverage issue while he was supposedly defending Harvey, did not even enter an appearance for two months after he was retained, never met his client and did not attend any depositions despite Harvey's lawyer's requests for help. The jury could well have concluded, on the basis of this evidence, that Allstate acted in bad faith in hiring a lawyer who would help them avoid liability rather than a lawyer who would provide an adequate defense, and breached its fiduciary duty to defend Harvey by enlisting this lawyer's help in contesting coverage.
 
 
 21
 The district court justified its contrary conclusion by noting that Harvey presented no expert testimony and did not prove she was dissatisfied with the settlement of the case. Neither of these facts justify a JNOV in favor of Allstate.
 
 
 22
 "Expert testimony is not necessary where the breach of duty ... is so clear and so obvious that the trier of fact may find a deviation from the appropriate standard ... from its common knowledge." Bowman v. Doherty, 686 P.2d 112, 120 (1984). Harvey was not asserting a malpractice claim and did not need to prove that McMaster violated professional norms by failing to attend depositions or meet his client. Rather, Harvey was arguing that Allstate did not fulfill its fiduciary duty to provide her with an adequate defense. Whether an insurance company exercised due care or acted in bad faith are matters are within a jury's common knowledge.
 
 
 23
 Harvey also did not have to prove that Allstate's failure to provide her with an adequate defense necessarily prejudiced the outcome. Harvey could have obtained a satisfactory defense by enlisting Egan's help and by attending depositions herself. Allstate's efforts may nonetheless have been inadequate. They never paid Egan for any of her efforts, even during the time when McMaster was "getting up to speed on the case," and they did not compensate Harvey for the time she spent working on the case. The district court erred in concluding that Harvey could not be satisfied with her settlement and still have received an inadequate defense from Allstate.
 
 IV. ATTORNEY'S FEES
 
 24
 Harvey's umbrella homeowner's policy explicitly promised coverage for the exact claims Whitaker filed against her. Allstate's attempt to deny coverage throughout the litigation is in direct contradiction to the plain meaning of their policy and to their own internal memorandum. Thus, as the trial court found, Harvey is entitled to recover the cost of defending against Allstate's declaratory judgment action. State Farm Fire and Casualty Co. v. Liggett, 689 P.2d 1187 (Kan.1984); Upland Mutual Ins. Co. v. Noel, 519 P.2d 737 (Kan.1974).[9]
 
 
 25
 However, the district court abused its discretion in limiting Harvey's attorney fee recovery to the attorney's fees incurred up to the time when Allstate asked to dismiss its Declaratory Judgment Action plus ten hours. Allstate continued to contest coverage throughout the trial, and to fight Harvey's contract claims, and continues to do so before this court.[10] Because of Allstate's refusal to admit coverage, even though coverage was obvious to its agents early in the case, Harvey was required to litigate her claims first in the district court and then before this court. In view of Allstate's intransigence and self-serving denial of coverage even when it had no good faith argument for denying it, Harvey is entitled to attorney's fees including fees for prosecuting her counterclaims and fees for this appeal. On the record before this court, Allstate is fortunate to have avoided major punitive damages and sanctions.
 
 IV. RULE 11 SANCTIONS
 
 26
 Finally, Allstate contends that the district court abused its discretion in imposing sanctions under Fed. R. Civ. Pro. 11 against it for failing to dismiss its declaratory judgment action against Whitaker. Burkhart through Meeks v. Kinsley Bank, 852 F.2d 512, 515 (10th Cir.1988) (Rule 11 sanctions are reviewed under an abuse of discretion standard).
 
 
 27
 Allstate claims it could not dismiss its action against Whitaker because, under Kansas law, it was required to join the claimant in a declaratory judgment action against an insured. See Heinson v. Porter, 772 P.2d 778 (1989), overruled in part on other grounds, Glenn v. Flemming, 799 P.2d 79, 88-93 (Kan.1990). We agree with the district court that Heinson is not applicable because Whitaker's counterclaims against Harvey and Allstate had been settled and because Harvey was not claiming coverage for losses to Whitaker but for the fees and expenses of defending Whitaker's counterclaim.[11] Whitaker was not a necessary party to such an action, and the district court did not abuse its discretion in awarding Rule 11 sanctions against Allstate where it refused to approve Whitaker's requests for dismissal for two years after its own motion to dismiss.
 
 
 28
 The judgment below is AFFIRMED in part and REVERSED in part. Harvey's supplemental statement for costs and fees on appeal should be presented to the district court for inclusion in the amended judgment.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [3]
 Allstate had notice that the case was proceeding since February, 1984, because Whitaker had contacted them when Harvey filed her initial EEOC charge, seeking coverage for defending this claim. Allstate denied coverage
 
 
 [4]
 At trial, McMaster testified that sexual harassment cases were, in his opinion, "nothing new. The only thing that was new was that the ladies had learned they could profit by it now, which was another form of the oldest profession in the world."
 
 
 [5]
 Allstate continues to claim that McMaster did not know of the declaratory judgement action until after the underlying case was settled and cite his direct testimony on this point. However, on cross, McMaster admitted receiving a July letter from Allstate discussing the declaratory judgment action. Moreover his bills to Allstate show that he spent more time talking to the lawyer working on the declaratory judgement than talking to his client
 
 
 [6]
 Given this evidence, Allstate's continual insistence that lack of notice is "undisputed" is misleading at best and at times appears to constitute a deliberate attempt to deceive this court
 
 
 [7]
 As Harvey points out, case law suggests Allstate had the burden of proving which costs were attributable to prosecuting Harvey's case rather than to defending Whitaker's counterclaim. See, e.g., Gon v. First State Ins. Co., 871 F.2d 863, 868-89 (9th Cir.1989); Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F.Supp. 324, 334 (E.D.Pa.1991); Crist v. Insurance Co. of North America, 529 F.Supp. 601, 604 (D. Ut.1982). Neither party was able to prove that any particular deposition was taken solely for the purpose of prosecuting or defending the claim. Thus, the jury could have held Allstate liable for the entire costs of the litigation or even a greater amount, as Harvey attended some depositions alone
 
 
 [8]
 The jury apparently awarded Harvey the difference between Egan's original estimate of the costs of prosecuting Harvey's claim ($50,000, which was actually his higher estimate) and the amount Egan ultimately paid under the contingent fee agreement ($144,000). While we do not find that this method is necessarily correct, it is as reasonable as any other. As both parties admit, distinguishing the costs spent prosecuting a case from those of defending a counterclaim is inevitably difficult, and, in the present case, the calculations are made more difficult by the contingent fee agreement between Harvey and Egan. Moreover, neither the court's methods nor those Allstate proposes are any more accurate
 
 
 [9]
 The Upland court found that a insured who successfully defended against an insurance company's declaratory judgment action was entitled to attorney's fees and costs by interpreting a insurance company's declaratory judgement action as a "request" to incur expenses. Harvey's policy promised to "repay an insured for all reasonable expenses incurred at our request."
 
 
 [10]
 Their brief states that Harvey is not entitled to attorney's fees because "there has never been a finding of coverage under Allstate's policies." We are at a loss to understand how Allstate could seriously make such a statement and view this statement as evidence supporting Harvey's contention that she was unable to receive just compensation from Allstate without coming to court
 
 
 [11]
 See also Foster v. Lawrence Memorial Hosp., 809 F.Supp. 829, 830-31 (D. Kan.1992) (rejecting Heinson even in coverage disputes because (1) the indispensable party discussion in Heinson was dicta, (2) Heinson is of questionable validity because it was overrule in part one year later and (3) because this court is governed by the Federal Rules of Civil Procedure and not by Kansas procedural rules)