**Laverne POWERS, Plaintiff,**

v.

**UNITED STATES of America, FARMERS HOME ADMINISTRATION, Defendant.**

**Civ. A. No. 4:89–2198–15.**

United States District Court,
D. South Carolina,
Florence Division.

April 24, 1990.

George G. Reaves, Florence, S.C., for plaintiff.

John Grimball, U.S. Atty., Columbia, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

This is a declaratory judgment action in which plaintiff, Laverne Powers, seeks a declaration that defendant, United States of America, acting through the Farmers Home Administration, does not have a se-

curity interest in plaintiff's 1989 crops. The issue is currently before the court on cross-motions for summary judgment. Because the requirements found in the South Carolina Code for the attachment of a security interest are satisfied, defendant's motion for summary judgment is granted. Rule 56, Fed.R.Civ.Proc.

In his complaint, plaintiff requests this court to issue a declaratory judgment "determining that crops produced by the plaintiff during the crop year 1989 are not subject to any security interest in favor of the defendant." In the language of the U.C.C., the issue is whether a security interest has "attached" and continues to attach to the crops in question.[1] A security interest attaches when three events occur: "[1] there is agreement ... that it attach and [2] value is given and [3] the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching." S.C. Code Ann. § 36–9–204(1).[2]

■ The parties signed several security agreements granting defendant security interests in plaintiff's crops. The security agreement upon which defendant relies for purposes of this motion is the one signed February 19, 1985 (Exh. 10).[3] In that security agreement, Laverne and Virginia Powers granted the United States of America a security interest in

all crops, annual and perennial, and other plant products now planted, growing or grown, or which are hereafter planted or otherwise become growing crops or other plant products (a) within the one year period or any longer period of years permissible under State law, or (b) at any time hereafter if no fixed maximum peri-

---

**1.** This court will not address the question of whether this security interest is perfected, since attachment is the point at which the security interest becomes enforceable against the debtor, and this action seeks a determination that "the crops produced by the plaintiff during the crop year 1989 are not subject to any security interest in favor of the defendant." *See* §§ 36–9–203(1), 36–9–201. *See also Branch v. Steph,* 389 F.2d 233, 236 (10th Cir.1968) ("perfection ... acts only to give the secured creditor priority over all liens on the same collateral perfected subse-

quent thereto and does not create or destroy a [valid] security interest.")

**2.** Effective January 1, 1989, article 9 of the U.C.C. in South Carolina underwent significant changes. Because the transactions in question took place prior to this date, however, the sections cited are to the old code.

**3.** Exhibits to plaintiff's deposition.

od is prescribed by State law, on the . . . described real estate.[4]

This security agreement clearly satisfies the requirement for attachment that there be an agreement. The requirement that the debtor have rights in the collateral is satisfied as of the date the crops were planted. According to the South Carolina Reporter's Comments, "For mortgages of future crops, . . . the beginning of their existence by planting is the prescribed point of attachment of the security interest." As soon as the 1989 crops were planted, therefore, this requirement was satisfied.

■ The requirement that the secured party give value for the security interest is the crucial question posed by these motions. Section 36–1–201(44) states that "a person gives 'value' for rights if he acquires them . . . (b) as security for or in total or partial satisfaction of a pre-existing claim; or . . . (d) generally, in return for any consideration sufficient to support a simple contract."

Because section 36–1–201(44)(b) defines value to include rights acquired as "security for . . . a preexisting claim," plaintiff's argument that "new money" must be advanced is clearly wrong. Plaintiff signed two promissory notes on April 10, 1981: one for $74,680.00 (Exh. 1), and a second note for $82,170.00 (Exh. 2). Those debts were subsequently reamortized several times, including the reamortization on February 19, 1985, when plaintiff signed a promissory note for $32,632.41. The loans made in 1981 are clearly "preexisting claims" falling within the definition of value in § 36–1–201(44)(b). The Fifth Circuit Court of Appeals has explained that "[t]he UCC does not require, in the strict common law sense, that consideration be given as a prerequisite for a security interest to attach to collateral." *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.,* 570 F.2d 1220, 1224 (5th Cir.1978). As White and Summers have described, courts faced with the argument that a creditor does not give value if he takes his security interest to

secure a preexisting claim against the debtor have "tossed these parties out on their ears, as well they ought." J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 23–4, p. 915 (2d ed. 1980). Even without the reamortization, therefore, the preexisting debt is sufficient to satisfy the definition of "value" in § 36–1–201(44)(b).

■ Because the loan was reamortized, however, there is an additional basis for finding "value." S.C.Code Ann. § 36–1–201(44)(d) defines "value" to include "consideration sufficient to support a simple contract". By providing more favorable terms for the repayment of the debts, defendant gave consideration for the 2/19/85 security agreement. It is an established contract principle that consideration is found in the extension of time for the payment of a debt. *See generally,* 69 Am.Jur.2d *Secured Transactions* § 279, p. 111 (1973). That is the effect of the reamortization of the loans; therefore, the reamortization would be "consideration sufficient to support a simple contract" and fall within § 36–1–102(44)(d)'s definition of "value" as well.

■ Because the three requirements for attachment of a security interest are met in this case, defendant's security interest has attached and continues to attach to the crops described in the February 19, 1985 security agreement. Plaintiff has attempted to invoke the seven year limitation found in § 36–9–204(4)(a), which provides:

No security interest attaches under an after-acquired property clause to crops which become such more than seven years after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase or improvement transaction evidenced by a contract, mortgage, or deed of trust may if so agreed attach to crops to be grown on the land during the period of such real estate transaction.

4. Plaintiff indicated at the hearing on May 23, 1990 that the real estate described in this securi-

ty agreement is the land plaintiff farmed in 1989.

S.C.Code Ann. § 36–9–204(4)(a). As that section makes clear, however, the seven years period runs from the time the security agreement is executed. Although this limitation may apply to the security interest granted in the 1981 security agreement, seven years have not passed since the creation of the security interest on February 19, 1985. Because this court has already determined that a valid security interest attached to plaintiff's crops through that security agreement, this section cannot be seen as a limitation in 1989.[5]

Based upon the foregoing reasoning and cited authorities, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. Rule 56, Fed.R.Civ.Proc.

IT IS SO ORDERED.

---

**5.** Plaintiff argues that the seven year provision is rendered meaningless if a creditor is allowed to circumvent the limitation simply by executing another security agreement. The comments to the official text of the U.C.C. (although omitted from the South Carolina Code) make clear that this lack of force is precisely the reason the limitation was omitted from the 1972 text:

> [T]he clause did require an annual security agreement for crops even when the encumbrance on crops was agreed to as part of a long-term financing covering farm machinery and other assets. The provision thus appeared meaningless in operation except to cause unnecessary paperwork, but it did in-

troduce some element of uncertainty as to its purpose.
Official Reasons for 1972 Change, para. 4. The reference in this section to an "annual security agreement" would become "a security agreement every seven years" in this case, since the South Carolina U.C.C. provision provided for a seven year limitation in place of the Official U.C.C.'s one-year limitation. In any event, this comment makes clear that the parties could circumvent the limitation in § 9–204(4)(a) simply by executing successive security agreements. With the execution of each new security agreement, the § 9–204(4)(a) clock would begin running again.