963 F.2d 368
 17 UCC Rep.Serv.2d 1309
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Alfred W. SCHAHEEN; Ivy Repair Garage, Incorporated, a body
corporate, Plaintiffs-Appellees,
ALLSTATE FINANCIAL CORPORATION, a body corporate, Defendant-Appellant.
v.
Alfred W. SCHAHEEN; Ivy Repair Garage, Incorporated, a body
corporate, Plaintiffs-Appellants,
ALLSTATE FINANCIAL CORPORATION, a body corporate, Defendant-Appellee.
 Nos. 91-1556, 91-1574.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: April 14, 1992
Decided: May 26, 1992
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge.
 Robert J. Harris, Baltimore, Maryland, for Appellant.
 Jerrold A. Thrope, GORDON, FEINBLATT, ROTHMAN, HOFFBERGER & HOLLANDER, Baltimore, Maryland, for Appellees.
 Before HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Allstate Financial Corp. appeals from the district court's judgment in favor of Ivy Repair Garage, Inc. and Alfred W. Schaheen for $129,482.47 and $14,480.25, respectively. Allstate contends that its security interest in the disputed assets is superior to the security interests of Appellees. Specifically, Allstate claims that the district court erred by finding that Kane Delivery Ltd. (Kane) and Mercury Express (Mercury) had their "chief financial offices" in Maryland as of July 9, 1988, that Schaheen and Ivy gave value for their security interests in Kane and Mercury, and that Schaheen had no knowledge of Allstate's prior perfected lien in another jurisdiction. Ivy and Schaheen cross appeal from the district court's denial of pretrial interest on the judgment amount. Because we find that the district court committed no error, we affirm.
 
 
 2
 * Alfred W. Schaheen ran a trash collection business called Advance Disposal Service (Advance Disposal) from 1981 until March 30, 1988, when he sold the assets of Advance Disposal to Earl Leroy Martin. On April 1, 1988, Martin began operating a residential trash collection business called Kane Delivery, Ltd. t/a Advance Disposal Service (Kane-Advance). After Martin's purchase of Advance Disposal's assets, Schaheen continued to assist Martin with operating the business and in April 1988 leased office space to Martin in Gaithersburg, Maryland. In fact, Schaheen was responsible for introducing Martin and Kane to Laidlaw Waste Systems, Inc. (Laidlaw). Laidlaw subcontracted with Kane for Kane to collect trash from approximately 40,000 homes in Montgomery County, Maryland. Schaheen personally guaranteed Kane-Advance's performance of the Laidlaw subcontract.
 
 
 3
 Martin owned and operated several Washington, D.C., courier businesses, including a Washington-based courier company called Mercury Express, Inc. (Mercury), at the time he purchased an Annapolis-headquartered courier business called"Kane Delivery" in the fall of 1987. After Martin purchased Kane Delivery, he consolidated the financial and dispatch operations of his courier businesses and ran them out of a Washington office, although he continued to use separate letterheads.
 
 
 4
 In early 1988, most of the financial operations of Mercury and Kane Delivery were moved to Rockville, Maryland. The books and records were kept in the Rockville office, payroll was processed there, accounts receivable and accounts payable were processed there, and both customers and creditors of Kane were referred to that office.
 
 
 5
 Martin agreed to pay Schaheen $125,000 for the services he rendered to Kane, and also agreed to borrow an additional $21,000 from Schaheen so that Martin could make his payroll. Late in the summer of 1988, Martin acknowledged these debts by signing promissory notes for $125,000 (Note 1) and $21,000 (Note 2), respectively.
 
 
 6
 Ivy Repair Garage, Inc. (Ivy) was in the business of auto repair and service. Ivy repaired and serviced fleet vehicles used by Kane. Because of Martin's inability to pay for service work performed by Ivy, Martin signed a promissory note (Note 3) acknowledging a debt of $51,700 in September 1988. Ivy advanced funds to help Kane meet its payroll. On September 1, 1988, this debt was acknowledged by Kane in another promissory note (Note 4) for $50,000. Ivy also rented office space to Kane-Advance. Kane-Advance acknowledged this debt in a promissory note (Note 5) for $31,666.70 on October 1, 1988.
 
 
 7
 On November 3, 1988, Kane-Advance and Mercury executed security agreements in favor of Ivy and Schaheen. Schaheen took a security interest in the accounts of Mercury to secure repayment of Notes 1 and 2. Ivy took a security interest in the accounts of KaneAdvance to secure repayment of Notes 3, 4, and 5. The security agreements and financing statements were filed in Montgomery County Circuit Court and with the Maryland State Department of Assessments and Taxation on November 7, 1988.
 
 
 8
 Allstate, a financial services corporation, had periodically contracted with Martin to engage in the business of factoring the accounts receivable of Kane-Advance and Mercury. Allstate had previously perfected a security interest in the accounts receivable of Mercury in the District of Columbia in 1987. Allstate perfected a Maryland security interest in Kane Advance and Mercury on November 9, 1988. After November 7, 1988, Allstate collected amounts due on the accounts of Kane-Advance and Mercury in the amount of $129,482.47 for Kane-Advance and $14,448.25 for Mercury. At trial, the dispute between the parties concerned the priority of the security interests. While Appellees relied on the earlier filed November 7 security agreements, Allstate relied on its previous security interest filed in the District of Columbia and alleged defects in Appellee's security interests.
 
 II
 
 9
 The district court found that the trash-collecting branch of KaneAdvance was always located in Maryland and never in Washington, D.C. In addition, it found that for purposes of Md. Com. Law I Code Ann. § 9-103(3) (1975), Kane Delivery, Ltd. and Mercury Express had their "chief executive office" in Maryland as of July 8, 1988. Because Kane-Advance was located in Maryland as of July 8, 1988, the four-month grace period Allstate possessed pursuant to § 9103(3)(e) had expired by the time Allstate perfected its interest on November 9, 1988. Thus, the district court reasoned, Schaheen's and Ivy's interests in the collateral were superior to Allstate's.
 
 
 10
 The district court also found that for purposes of Md. Com. Law I Code Ann. § 1-201(44)(b) (1975) Ivy and Schaheen gave "value" of the type contemplated by Md. Com. Law I Code Ann.s 9-203(1) (1991 Supp.) when they acquired their interests in the accounts receivable of Kane Delivery Ltd. and Mercury Express as security for a pre-existing claim. The court also found that Schaheen and Ivy did not have knowledge of the security interest Allstate had previously perfected in the District of Columbia in 1987 and that, therefore, they could not be charged with knowledge of such an interest pursuant to Md. Com. Law I Code Ann. § 9-401(2) (Supp. 1991).
 
 
 11
 The district court awarded judgment to Schaheen for $14,480.25 and to Ivy for $129,482.47, but denied their request for prejudgment interest.
 
 III
 
 12
 Allstate renews its arguments made at trial. Initially, Allstate claims that its security interest filed in 1987 in the District of Columbia is superior because its November 9, 1988 Maryland security interest was timely filed as a continuation statement within four months of the date Kane-Advance and Mercury moved their chief executive offices from the District of Columbia to Maryland. See Md. Com. Law I Code Ann. § 9-103(3)(d). We disagree.
 
 
 13
 "Chief executive office" is not specifically defined in the statute. However, courts have considered a variety of factors when determining where this is. This is generally considered to mean the place from which in fact the debtor manages the main part of his business operations. See 2 James J. White and Robert S. Summers, Uniform Commercial Code, § 24-23 at 406 (1988 ed.). The key factors considered when determining where a business is located are the place from which it is managed and the place where creditors would reasonably expect to search for credit information. See In re Golf Course Builders Leasing, Inc., 768 F.2d 1167, 1170 (10th Cir. 1985); In re Metro Communications, Inc., 95 B.R. 921, 927 (Bankr. W.D. Pa. 1989).
 
 
 14
 There is ample evidence in the record to support the district court's conclusions that Maryland was the locale from which Martin conducted virtually all of his financial operations and from which the de facto management of his courier and trash-collection operations occurred. Therefore, we do not find the district court's finding to be clearly erroneous.
 
 
 15
 Alternatively, Allstate contends that Appellees' security interests are defective because they did not give value for their interests. See § 9-203(1). The district court found for Appellees. We agree.
 
 
 16
 First, Schaheen testified that at the time he forwarded various sums to Martin he did contemplate security agreements, which were later formally memorialized in the promissory notes. Also, the law clearly permits an antecedent or preexisting debt to support a security agreement under section 1-201(44)(b). See Cipriano v. Tocco, 772 F. Supp. 344, 350 (E.D. Mich. 1991); Powers v. United States Farmers Home Adm., 738 F. Supp. 174, 176 (D.S.C. 1990). Since that is what undisputedly occurred here, Allstate's argument lacks merit.
 
 
 17
 In its final argument, Allstate contends that Appellees' security interests are defective because Appellees had knowledge of Allstate's 1987 District of Columbia security interest prior to filing their Maryland security interests in 1988. See § 9-401(2). However, the record contains no testimonial or documentary evidence that Schaheen knew of Allstate's 1987 District of Columbia security agreement with Martin and Mercury Express. Therefore, the district court's finding that Schaheen and Ivy did not have knowledge of the security interest Allstate had previously perfected in the District of Columbia in 1987 and that, consequently, that section 9-401(2) was inapplicable to the facts of this case, was not clearly erroneous.
 
 
 18
 Finally, Schaheen and Ivy claim in their cross-appeal that the district court abused its discretion by denying them pretrial interest. The award of prejudgment interest is generally left to the discretion of the trial judge. Agnew v. State, 446 A.2d 425, 447 (Md. App. 1982). The appellate court will generally reverse a trial judge's discretionary determination not to allow prejudgment interest only when "the obligation to pay, and the amount due, had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." Sloane, Inc. v. House & Assocs., 532 A.2d 694, 702 (Md. 1987).
 
 
 19
 In light of the complex factual scenario present here and the existence of a genuine dispute over the rights to the funds at issue, we cannot say that the district court abused its discretion by declining to award prejudgment interest.
 
 IV
 
 20
 In conclusion, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED